# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

───────────

No. 14-30559

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2015

Lyle W. Cayce
Clerk

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ELLIOTT DUKE,

Defendant - Appellant

───────────

Appeal from the United States District Court
for the Western District of Louisiana

───────────

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

PER CURIAM:

Elliot Duke (Duke) pled guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). The district court sentenced Duke to 240 months in prison, the statutory maximum, and imposed several special conditions of supervised release, including one unconditional, lifetime ban on accessing computers capable of Internet access and another prohibiting contact with individuals under the age of 18. On appeal, Duke challenges the procedural and substantive reasonableness of his sentence and the above-referenced conditions of his supervised release. For the reasons stated herein, we AFFIRM the procedural and substantive reasonableness of

No. 14-30559

Duke's sentence, VACATE two special conditions of supervised release, and REMAND for resentencing proceedings consistent with this opinion.

I.

The following facts are taken from the presentence investigation report (PSR), to which neither Duke nor the Government objected. On May 14, 2013, detectives from the Vernon Parish Sheriff's Department in Leeville, Louisiana, were contacted by an individual claiming that his landlord, Duke, had been viewing child pornography. Duke's tenant reported seeing several sexually explicit images on Duke's laptop, including one involving a two- to four-year-old child.

Based on this information, detectives secured a search warrant for Duke's residence. Once advised that the detectives were at his residence to execute a search warrant, Duke expressed his willingness to cooperate and consented to the search. He admitted to possessing child pornography on his computer and to trading such images with other individuals over the Internet. After verifying that his computer contained images of child pornography, detectives took Duke into custody for further questioning.

While in custody, Duke again admitted to possessing child pornography on his computer with at least one image depicting a two-year-old child. He also admitted to having rape fantasies. Finally, after detectives found sexually explicit images of a teenage girl on his cellphone, Duke admitted that he had begun an online relationship with a young girl in Alabama who represented that she was 16 years old. Over the course of the one and one-half months that they were involved, the two engaged in sexual online conversations, which transitioned into exchanging sexual text messages and pictures.

A subsequent investigation conducted with Duke's consent by Homeland Security Investigations uncovered over 50 emails between Duke and another individual in which several images containing child pornography were

2

exchanged. A forensic investigation of Duke's two laptops (only one contained images of child pornography) revealed 168 videos and 187 still images of child pornography.

Duke was then charged with one count of possessing child pornography (18 U.S.C. § 2252A(a)(5)(B)), four counts of receipt of child pornography (18 U.S.C. § 2252A(a)(2)(B)), and four counts of distribution of child pornography (18 U.S.C. § 2252A(a)(2)(B)). Pursuant to a written plea agreement, Duke pled guilty to one count of receipt of child pornography.

The PSR determined that Duke's base offense level under the United States Sentencing Commission Guidelines Manual (the Guidelines) was 22 with a criminal history category of I. After several enhancements were assessed and a three-level reduction for acceptance of responsibility was credited, Duke's total offense level was 37. The resulting Guidelines range was 210 to 262 months imprisonment, but because the statutory maximum was 240 months, the Guidelines range became 210 to 240 months.

In anticipation of his sentencing hearing, Duke submitted a sentencing memorandum in which he requested a downward variance, citing personal characteristics such as his physically and emotionally abusive childhood, mental illness, and his service in the United States Army, for which he renounced his United Kingdom citizenship. Furthermore, he argued, the Guidelines range was inherently unreasonable because it failed to distinguish between the various child pornography offenses. The Government argued in opposition that the Guidelines range was presumptively reasonable and that a within-Guidelines sentence was warranted under the circumstances.

Duke reasserted his arguments for a downward variance at sentencing, which the district court rejected when sentencing him to the statutory maximum of 240 months imprisonment. The district court also imposed a lifetime term of supervised release with several conditions. The district court

No. 14-30559

explained that it considered the PSR, Duke's sentencing memorandum and the Government's opposition, his character letters, and the factors contained in 18 U.S.C. § 3553 in imposing sentence.

In a written Statement of Reasons (SOR), the district court further explained Duke's sentence, stating that Duke was "actively engaged in child pornography with other [sic] via the internet, with some videos and images involving rape of toddlers," that Duke entertained rape fantasies, and that he had established contact with a 16 year-old girl with whom he exchanged sexually explicit pictures.   Duke objected at sentencing to two special conditions of supervised release: (1) that he is "not to have access to any computer that is capable of internet access"; and (2) that he is "to have no contact with anyone under the age of 18."  He also objected to the substantive reasonableness of his sentence.

On appeal, Duke challenges the procedural and substantive reasonableness of his sentence and the above-referenced special conditions of his supervised release.

## II.

Duke first contends that his sentence is procedurally and substantively unreasonable.  We review the reasonableness of the imposed sentence for abuse of discretion.  *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).  Under this review, we must first determine whether the district court committed any significant procedural error, such as "failing to adequately explain the chosen sentence."  *Id.* at 360.  If the district court's decision is procedurally sound, we will then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard."  *Gall v. United States*, 552 U.S. 38, 51 (2007).

Duke failed to object to the procedural reasonableness of his sentence before the district court.  Therefore, we review his challenge to the procedural

No. 14-30559

reasonableness of his sentence for plain error. *See Mondragon-Santiago*, 564 F.3d at 361. Under plain error review, we must decide "(1) if there was error, (2) if it was plain, (3) if the error affects substantial rights, and (4) if allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Alvarado*, 691 F.3d 592, 598 (5th Cir. 2012). However, because Duke objected to the substantive reasonableness at sentencing, we review his substantive challenge under the usual, abuse of discretion standard. *Mondragon-Santiago*, 564 F.3d at 361.

A.

Duke contends that the district court procedurally erred by failing to adequately articulate reasons for its imposed sentence at the sentencing hearing. Specifically, Duke argues that his valid arguments and the mitigating evidence he offered in support of his request for a downward variance required more than the district court's "boilerplate statement" that it had considered the § 3553 factors.

While the sentencing court is required to state "the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), a full explanation of the sentencing factors is not required in every case. *Rita v. United States*, 551 U.S. 338, 356 (2007). When, as here, the district court imposes a within-Guidelines sentence, "little explanation" is required to make this showing. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). However, more is required if the parties provide legitimate and nonfrivolous arguments supporting a departure or variance. *Mondragon-Santiago*, 564 F.3d at 362. In such instances, a district court "will normally go further and explain why [it] has rejected those arguments." *Rita*, 551 U.S. at 357. Nevertheless, such explanations need not be extensive. *Id.* Instead, "[t]he sentencing judge should set forth enough to satisfy the appellate court that [s]he has considered the parties' arguments and has a reasoned basis for exercising h[er] own legal

decisionmaking authority." *Id.* at 356. We have concluded that § 3553(c)'s ultimate goal is to "permit effective appellate review of sentencing." *United States v. Gore*, 298 F.3d 322, 325 (5th Cir. 2002).

Assuming without deciding that the district court failed to give adequate reasons at sentencing, it did provide further justification for the sentence imposed in its written SOR. In its written SOR, the district court explained:

> The sentence addresses the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness f [sic] the offense, and to afford adequate deterrence to criminal conduct. This defendant was actively engaged in child pornography with other [sic] via the internet, with some videos and images involving rape of toddlers. The defendant admitted to rape fantasies. He had also established contact with a 16 year old girls [sic] and has been trading sexual images with her.

The written SOR provides sufficient explanation to allow for effective appellate review. *See Gore*, 298 F.3d at 325. From this statement, we are satisfied that the district court considered Duke's arguments for a lesser sentence but ultimately rejected those arguments in light of the nature and circumstances of the offense, Duke's history and characteristics, the seriousness of the crime, and the need for future deterrence. Under these circumstances, Duke has failed to establish plain error. *See United States v. Sealed Juvenile*, 781 F.3d 747, 752 (5th Cir. 2015) (holding that the defendant failed to show plain error where the district court issued written judgement allowing for effective review); *Gore*, 298 F.3d at 325–26 (concluding that there was no plain error from district court's failure to state reasons in open court when district court articulated reasoning in its written SOR). Moreover, Duke has failed to demonstrate that any error affected his substantial rights. *See Mondragon-Santiago*, 564 F.3d at 364–65 (holding that there is no reversible error when the defendant has failed to demonstrate that further explanation would have changed his within-Guidelines sentence).

No. 14-30559

Because Duke has failed to demonstrate plain error, we conclude that the district court did not procedurally err in imposing sentence.

B.

Duke next challenges his within-Guidelines sentence as substantively unreasonable. The district court must correctly calculate the guidelines range and make an individualized assessment based on the facts of the case in light of 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49–50. The district court shall also impose a sentence sufficient, but not greater than necessary, to comply with § 3553(a)(2)'s goals. *See* § 3553(a). Where, as here, the district court imposes a sentence within a properly calculated Guidelines range, the sentence is entitled to a rebuttable presumption of reasonableness on appeal. *United States v. Rashad*, 687 F.3d 637, 644 (5th Cir. 2012). "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Duke first argues that his sentence is substantively unreasonable because Guidelines § 2G2.2—the Guidelines section applicable to child pornography offenses—lacks an empirical basis and therefore fails to distinguish between the least culpable and most culpable defendants. However, Duke acknowledges that this argument is foreclosed by *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011), and raises the argument to preserve this issue for future appellate review.

Duke further argues that his sentence is substantively unreasonable in light of the mitigating evidence he presented to the district court relevant to his personal characteristics and history. Specifically, he contends that his military service, the absence of a criminal history, his history of abuse and

depression, and his possible loss of his United States citizenship warranted a lesser sentence. The district court considered this mitigating evidence but determined that the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, and the need to deter future criminal conduct justified the sentence imposed. We find no abuse of discretion in the district court's weighing or balancing of these factors. *See United States v. Jenkins*, 712 F.3d 209, 215 (5th Cir. 2013) (finding a 20-year sentence for receipt of child pornography substantively reasonable despite mitigating evidence of defendant's childhood learning and behavioral disorders and Army service in Iraq). Accordingly, Duke has failed to rebut the presumptive reasonableness of his within-Guidelines sentence.

## III.

Finally, Duke challenges the two absolute, lifetime bans imposed as special conditions of supervised release as overly broad. Because Duke contemporaneously objected to these two restrictions, our review is for abuse of discretion. *United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013) (per curiam).

A district court has wide, but not unfettered, discretion in imposing terms and conditions of supervised release. *United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001). A district court's discretion is curtailed by statute in two ways. *See* 18 U.S.C. § 3583(d); *see also United States v. Fields*, 777 F.3d 799, 802–03 (5th Cir. 2014). First, the condition of supervised release must be "reasonably related" to one of four statutory factors: (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for deterrence of criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with vocational training, medical care, or other

correctional treatment. *Paul*, 274 F.3d at 165 (citing §§ 3583(d), 3553(a)(1)–(2)). Second, the condition must be narrowly tailored such that it does not involve a "greater deprivation of liberty than is reasonably necessary" to fulfill the purposes set forth in § 3553(a). *See United States v. Rodriguez*, 558 F.3d 408, 412 (5th Cir. 2009). Moreover, the sentence should consider the policy statements issued by the Sentencing Commission. *Miller*, 665 F.3d at 126. The Guidelines recommend limiting a sex offender's computer usage, *see* § 5D1.3(d)(7)(B), and further recommend that the district court impose the maximum term of supervised release authorized by statute, which for sex offenses under § 3583(k), is life. *See id.* § 5D1.2.

Here, Duke does not contend that the special conditions are not reasonably related to his offense, nor could he. *See Paul*, 274 F.3d at 169 (concluding that a computer ban was reasonably related to a non-production child pornography offense, and the need to prevent recidivism and protect the public); *Rodriguez*, 558 F.3d at 414 (deeming an association ban reasonably related to a defendant's pending sexual assault on a minor charge in state court rather than the underlying federal conviction for assault on a federal officer). Therefore, the question is not whether the special conditions are reasonably related to Duke's offense. Instead, the question is whether the scope coupled with the duration of the special conditions constitute a greater deprivation of liberty than reasonably necessary to accomplish statutory sentencing goals. We address each special condition in turn.

A.

Duke argues that the special condition prohibiting him from "hav[ing] access to any computer that is capable of internet access" is overly broad. Duke acknowledges that the district court could impose restrictions on his Internet access, but maintains that a blanket prohibition of all Internet usage is an unduly broad condition.

No circuit court of appeals has ever upheld an absolute, lifetime Internet ban. In fact, the Third and Seventh Circuits have refused to allow such bans. *See United States v. Heckman*, 592 F.3d 400, 409 (3d Cir. 2010); *United States v. Voelker*, 489 F.3d 139, 150 (3d Cir. 2007); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). While we have approved absolute Internet bans for limited durations of time, *see Paul*, 274 F.3d at 170, and lifetime Internet restrictions that conditioned Internet usage on probation officer or court approval, *see Ellis*, 720 F.3d at 225, we have not addressed whether absolute bans, imposed for the rest of a defendant's life, are permissible conditions. We conclude that they are not.

First, it is hard to imagine that such a sweeping, lifetime ban could ever satisfy § 3583(d)'s requirement that a condition be narrowly tailored to avoid imposing a greater deprivation than reasonably necessary. Indeed, an unconditional, lifetime ban is "the antithesis of a 'narrowly tailored' sanction." *Voelker*, 489 F.3d at 145; *see also Heckman*, 592 F.3d at 409 (concluding that "the unconditional, lifetime ban imposed . . . is so broad and insufficiently tailored as to constitute 'plain error'"); *Holm*, 326 F.3d at 877 ("We find that to the extent that the condition is intended to be a total ban on Internet use, it sweeps more broadly and imposes a greater deprivation on [the defendant's] liberty than is necessary, and thus fails to satisfy the narrow tailoring requirement of § 3583(d)(2)."). Moreover, our case law requires that Internet bans be narrowly tailored either by scope or by duration.

For example, in *United States v. Paul*, we upheld an absolute Internet ban that prohibited the defendant from "having, possessing, or having access to computers [and] the Internet" during the three-year term of his supervised release. 274 F.3d at 167, 170 (internal quotation marks omitted). We have subsequently reasoned that the broad scope of the absolute ban in *Paul* was able to stand, in part, because of the short duration of the supervised release

No. 14-30559

term. *See Miller*, 665 F.3d at 131; *see also United States v. Brigham*, 569 F.3d 220, 234 (5th Cir. 2009) (concluding that prohibiting all Internet access for "a limited time while on supervised release" was not unreasonable).

Further, we have upheld Internet restrictions imposed for long durations of time based on their narrow scope. For instance, in *United States v. Miller*, we upheld a conditional, 25-year computer and Internet restriction that prohibited the defendant from using any computer or any phone or electronic device capable of accessing the Internet without prior written approval from a probation officer. 665 F.3d at 126. The 25-year term of the Internet restriction withstood the defendant's challenge, in part, because "[t]he ban [was] not absolute or unconditional." *Id.* at 127. Finally, in *United States v. Ellis,* the court addressed a conditional, lifetime Internet restriction that prevented the defendant from "possess[ing], hav[ing] access to, or utiliz[ing] a computer or internet connection device . . . without prior approval of the court." 720 F.3d at 225 (ellipsis in original) (internal quotation marks omitted). There, the court further narrowed the scope of the conditional restriction by excluding electronic devices that fell outside the commonsense definition of the term "computers." *Id.* Unlike the conditions imposed in *Paul*, *Miller*, and *Ellis*, the absolute, lifetime ban at issue here is narrowed neither by scope nor by duration.

Second, the ubiquity and importance of the Internet to the modern world makes an unconditional, lifetime ban unreasonable. Although this court has not found the Internet to be so integral to modern life that a district court may not restrict its use, *Paul*, 274 F.3d 169–70, it has observed, along with many sister circuits, that "computers and the internet have become significant and ordinary components of modern life as we know it." *Brigham*, 569 F.3d at 234; *see also United States v. Albertson*, 645 F.3d 191, 200 (3d Cir. 2011); *United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010); *Holm*, 326 F.3d at 878. Indeed,

recently, in *United States v. Sealed Juvenile*, we concluded that an Internet condition requiring a defendant to request permission from his probation officer every time that he wanted to access a computer or the Internet was unreasonably restrictive based on the recognition that "access to computers and the Internet is *essential* to functioning in today's society." 781 F.3d at 756 (emphasis added). While we ultimately affirmed the condition, we did so subject to the admonition that it "[was] not to be construed or enforced in such a manner that the [defendant] would be required to seek prior written approval every single time he must use a computer or access the Internet." *Id.* at 756–57.

Here, the absolute computer and Internet ban would completely preclude Duke from meaningfully participating in modern society for the rest of his life. It would prevent him from using a computer for benign purposes such as word processing, because as Duke argues, in our modern world all computers[1] are *capable* of Internet access. Moreover, Duke would be prohibited from using the Internet for other innocent purposes such as paying a bill online, taking online classes, or video chatting and emailing with his family in the United Kingdom. *See Sealed Juvenile*, 781 F.3d at 756 ("The Internet is the means by which information is gleaned, and a critical aid to one's education and social development."). While access to the Internet could also allow Duke to view and trade despicable images of child pornography, there are means far short of an absolute, lifetime ban to prevent him from using the Internet for this purpose.[2]

---

[1] Duke proffers a broad reading of the word "computer" to include all electronic devices. This court, however, has refused to so broadly define the word computer, stating that "modern devices such as cars and appliances do not come under the purview of the ban because the categorical term 'computers' is subject to a 'common sense understanding of what activities the categor[y] encompass[es].'" *Ellis*, 720 F.3d at 225 (quoting *Paul*, 274 F.3d at 167).

[2] On remand, the district court should consider and impose alternative measures previously approved by this court. Such measures include, but are not limited to, installing

No. 14-30559

The Government offers future modification as a means to alleviate any potential concern with the Internet ban's scope or duration. While 18 U.S.C. § 3583(e)(2) and Federal Rule of Criminal Procedure 32.1(c) provide a vehicle by which Duke can seek future modification of the Internet ban, the possibility of future modification has no bearing on whether the district court abused its discretion today. As the First Circuit explained:

> Th[e] authority of . . . a future court to modify a sweeping ban on computer or internet use does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance. Otherwise, in the guise of delegation to a future decision-maker, sentencing courts could abdicate their responsibility to assess the compatibility of supervised release conditions with the goals of sentencing. To approve problematic conditions because a judge . . . might, in her or his discretion, relax them in the future, undermines the command to sentencing courts to not deprive offenders of more liberty than is necessary to carry out the goals of supervised release.

*United States v. Ramos*, 763 F.3d 45, 61 (1st Cir. 2014).

In sum, the district court abused its discretion by imposing a condition of supervised release that prohibited Duke from accessing computers or the Internet for the rest of his life. Such a condition is not narrowly tailored and therefore imposes a greater deprivation than reasonably necessary to prevent

---

computer monitoring and filtering software, subjecting Duke's computer hard drive to random searches (which may already be encompassed by the imposed special condition requiring that Duke "[s]hall allow Probation access to any computer he uses, for monitoring purposes"), prohibiting Duke from accessing or possessing sexually stimulating material, and conditioning Duke's computer and Internet usage on receiving prior approval from his probation officer or the district court. If the district court is inclined to impose the latter restriction, it should be mindful not to fashion a condition that would impose "the heavy burden of requiring prior written approval every time [Duke] must use a computer or access the Internet for . . . salutary purposes." *Sealed Juvenile*, 781 F.3d at 757. Moreover, if the district court decides to delegate its duties to a probation officer, it should do so "in accordance with [18 U.S.C. § 3603] and [the] Sentencing Guidelines, rather than with unfettered power of interpretation." *Rodriguez*, 558 F.3d at 417.

No. 14-30559

recidivism and protect the public, especially in light of the ubiquity and importance of the Internet.

B.

Duke next challenges the special condition prohibiting all "contact with anyone under the age of 18" for the rest of his life on overbreadth grounds. As with the Internet access ban, no other circuit court of appeals has upheld an absolute, lifetime associational ban. We have not upheld such a ban in a precedential opinion. *But cf. United States v. Sonnier*, 570 F. App'x 415, 416 (5th Cir. 2014) (per curiam) (upholding an absolute, lifetime associational ban on plain error review). We decline to do so here.

This court has routinely upheld conditions limiting a defendant's ability to associate with minors. *See Ellis*, 720 F.3d at 226 (affirming lifetime prohibition of unsupervised contact with minors without prior probation office approval); *United States v. Esler*, 531 F. App'x 502, 504 (5th Cir. 2013) (affirming district court's imposition of a 20-year conditional association restriction); *Rodriguez*, 558 F.3d at 418 (upholding condition forbidding unsupervised contact with minors, including defendant's children, without supervision of adult approved by the probation office); *United States v. Buchanan*, 485 F.3d 274, 288 (5th Cir. 2007) (approving an unconditional, three-year ban on plain error review); *Paul*, 274 F.3d at 167 (upholding an absolute, three-year association ban). In upholding these conditions, this court has emphasized the importance of protecting children as members of the public from potential future abuse. *See Rodriguez*, 558 F.3d at 417. However, this court has also recognized that a defendant maintains at least some liberty interest in freely associating with minors. *See id.* at 418. Therefore, despite the premium placed on protecting children from future abuse, this court has required that association bans be narrowly tailored to achieve some balance between protecting the defendant's liberty interest and the government's

14

interest in protecting the public. *Id.*; *see also Esler*, 531 F. App'x at 504 (concluding that in light of evidence that the defendant targeted children through a video game system, a conditional, 20-year association restriction was "a reasonable means of balancing [the defendant's] rights and the goal of protecting minors." (quoting *Miller*, 665 F.3d at 133) (internal quotation marks omitted)).

In *Rodriguez*, for example, the court approved a three-year association restriction that prohibited the defendant from "associating with any child or children under the age of eighteen, except in the presence and supervision of an adult specifically designated in writing by the probation officer." 558 F.3d at 411. This condition placed restrictions on the defendant's ability to contact his own children. *Id.* at 414. The court determined that the restriction was warranted in light of evidence that defendant sexually assaulted a 15-year-old girl and committed one act of violence against a pregnant woman. *Id.* at 417–18. Considering this evidence and the conditional nature of the restriction, the court concluded that, "[a]ny liberty interest [the defendant] has in freely associating with minors and raising his own children is outweighed by the need to protect them." *Id.* at 118.

In *Ellis*, the court concluded that a conditional, lifetime association restriction struck the right balance between protecting the public and respecting the defendant's interest because the condition "reference[d] activities by which [the defendant] could initiate and carry on regular contact with children" and further allowed the defendant to "request permission from his probation officer for incidental contact in locations such as his place of work should the need arise." 720 F.3d at 226. The court determined that these exceptions, permitting some contact, were important despite evidence that the defendant had a history of molesting young boys. *Id.*

No. 14-30559

Duke argues that the absolute, lifetime association ban is overly broad because, as written, it precludes incidental contact with minors. Relying on *United States v. Windless*, 719 F.3d 415, 422 (5th Cir. 2013), in which this court concluded that a condition prohibiting direct or indirect contact with a minor swept so broadly that it would impose liability for incidental contact, Duke argues that inadvertent contact with a minor will subject him to consequences for violating this term of his supervised release. We disagree.

In *Paul*, we construed the three-year, unconditional association ban at issue to exclude from its coverage incidental or casual encounters with minors. 274 F.3d at 166. Contrary to Duke's argument, this was not a case-specific holding. Instead, the court applied the well-established precept that "associational conditions do not extend to casual or chance meetings." *Id.* (quoting *United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001)). Because *Paul*, not *Windless*, governs the outcome of this case,[3] we construe the absolute, lifetime ban to permit incidental or chance encounters with minors. *See Paul*, 274 F.3d at 166.

Nevertheless, the unconditional, lifetime association ban is unreasonably broad, as it contravenes § 3583(d)'s requirement that a condition of supervised release be narrowly tailored. *See Rodriguez*, 558 F.3d at 413. As with the Internet ban, the association condition is narrowed neither by duration nor scope. It therefore fails to strike any balance between Duke's liberty interest and the Government's interest in protecting children. *See id.* at 418. Furthermore, the record does not support imposing such a sweeping ban for such an extended duration of time. Unlike the defendants in *Rodriguez* and *Ellis*, Duke does not have any history of direct sexual abuse of a child, and

---

[3] *Windless*, a decision that is in obvious tension with *Paul*, does not control. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("Where two panel decisions conflict, the prior decision constitutes the binding precedent.").

yet his condition is more onerous than the ones imposed on those defendants. This does not mean that Duke's association with children cannot be limited in some way, especially given that the record contains evidence that Duke has engaged in inappropriate communications with a young girl believed to be 16 years-old.  However, it does suggest that without evidence of harmful physical contact, his liberty interest in freely associating with minors should not be so drastically circumscribed for such an extended period of time.  *See Ellis*, 720 F.3d at 225–26 (emphasizing the importance of the conditional nature of the lifetime restriction).

We therefore conclude that the district court abused its discretion by imposing an absolute, lifetime condition prohibiting Duke from having any contact with minors for the rest of his life.

## IV.

For the reasons herein stated, we AFFIRM the procedural and substantive reasonableness of Duke's sentence, VACATE the two absolute, lifetime bans imposed as special conditions of supervised release, and REMAND to the district court for resentencing proceedings consistent with this opinion.