# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2024

Lyle W. Cayce
Clerk

No. 23-50449

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHRISTOPHER DALLAS NELSON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:22-CR-154-1

Before RICHMAN, *Chief Judge*, and OLDHAM and RAMIREZ, *Circuit Judges*.

PER CURIAM:

Christopher Dallas Nelson pleaded guilty to one count of possession of visual depictions of sexual activities by minors in violation of 18 U.S.C. § 2252A(a)(5)(B). Nelson appeals his sentence, including the terms of his supervised release. We affirm in part, vacate in part, and remand in part.

I.

Nelson pleaded guilty to one count of possession of child pornography. The Presentence Investigation Report ("PSR") revealed

No. 23-50449

Nelson possessed a total of 3,699 images, including 196 images of Nelson's seven-year-old daughter and 25 images of his five-year-old daughter. Nelson admitted he downloaded child pornography and took the images of his older daughter. Nelson refused to admit he produced images of his younger daughter, including images of sexual contact. He also attempted to obstruct justice by hiding a laptop and a cellphone containing evidence of his crimes. Nelson's total offense level under the U.S. Sentencing Guidelines was 43. Nelson filed a series of written and oral objections to the PSR.

The district court orally sentenced Nelson to 240 months in prison, a $250,000 fine, additional restitution and special assessments totaling $10,100, and supervised release for life. The court imposed mandatory and standard conditions of supervised release outlined "in the standing order of November 2016." ROA.100. The district court then added discretionary special conditions barring Nelson's access to the Internet. Nelson objected to the special conditions. The court's written judgment contained less severe versions of the Internet-related special conditions. Nelson timely appealed.

## II.

Nelson raises three issues on appeal. First, he claims the district court abused its discretion in denying him a sentencing reduction for acceptance of responsibility. Second, he contends that the written judgment conflicts with the sentence orally imposed by the district court in Nelson's presence. Finally, he argues the orally pronounced special conditions banning his use of the Internet constitute an abuse of discretion because they are not narrowly tailored and imposed a greater deprivation of liberty than reasonably necessary. We address each issue in turn.

First, the district court did not abuse its discretion in denying Nelson a sentencing reduction for acceptance of responsibility. We review the district court's responsibility-reduction denial under "a standard even more

2

deferential than a pure clearly erroneous standard." *United States v. Najera*, 915 F.3d 997, 1002 (5th Cir. 2019) (quotation omitted). We reverse such a denial only if it is "without foundation." *United States v. Juarez-Duarte*, 513 F.3d 204, 211 (5th Cir. 2008). To be eligible for this reduction, a defendant must "clearly demonstrat[e] acceptance of responsibility for the offense." *Id.* (citing U.S.S.G. § 3E1.1). "Ordinarily, conduct that results in an enhancement for obstruction of justice under [U.S.S.G.] § 3C1.1 'indicates that the defendant has not accepted responsibility for his criminal conduct.'" *Id.* (quoting U.S.S.G. § 3E1.1 cmt. n.4.). Here, Nelson's sentence included an enhancement for obstruction of justice, so we cannot say the denial was "without foundation." We therefore affirm the denial.

Next, Nelson contends his written judgment did not conform to the district court's oral pronouncement. It is well-settled in our circuit that when a district court's oral and written judgment conflict, the oral judgment controls. *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (en banc) ("If the in-court pronouncement differs from the judgment that later issues, what the judge said at sentencing controls."). A conflict arises when the written judgment "broadens the restrictions or requirements . . . from an oral pronouncement" or when the mismatch between the two judgments is more than "merely an ambiguity" and cannot be resolved by "look[ing] to the intent of the sentencing court, as evidenced in the record . . . ." *See United States v. Baez-Adriano*, 74 F.4th 292, 302 (5th Cir. 2023) (quotation omitted).

At sentencing in this case, the district court orally pronounced its decision to restrict Nelson's Internet access for life and without exception. The district court several times repeated, "I'm not going to at this time allow you to ever access a computer as a term of your supervised release," "[a]s far as I'm concerned, you will never use a computer or a phone, anything that has images on it or accesses the Internet," and "you will not have access to a computer." ROA.113–14. But the written judgment mirrors the PSR's

language. It outlines less restrictive special conditions, allowing Nelson to access and use the Internet "for reasons approved in advance by the probation officer." ROA.49, 141. We have repeatedly held, however, that the oral pronouncement controls over the written judgment. *See Diggles*, 957 F.3d at 557; *cf. United States v. Griffin*, 2022 WL 17175592, at \*4–\*7 (5th Cir. 2022) (Oldham, J., dissenting) (criticizing that result). So we are bound to so hold again today.

Finally, looking only to the oral pronouncement, the district court abused its discretion by imposing special conditions that prevent Nelson from using the Internet. District courts have "wide, but not unfettered, discretion in imposing terms and conditions of supervised release." *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015). Discretionary special conditions of supervised release must satisfy two criteria: First, they "must be 'reasonably related' to one of four [18 U.S.C. § 3553(a)(1)–(2)] statutory factors: (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for deterrence of criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with vocational training, medical care, or other correctional treatment." *Id.* (quoting *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001)). Second, "the condition[s] must be narrowly tailored such that [they do] not involve a greater deprivation of liberty than is reasonably necessary to fulfill the purposes set forth in § 3553(a)." *Id.* (quotation omitted). According to *Duke*, lifetime Internet bans with no exception for approved uses are not "permissible conditions" because they fail the "narrowly tailored" prong of the special conditions test. *Id.* at 399; *see also United States v. Scott*, 831 F.3d 562, 571–72 (5th Cir. 2016) (holding imposition of an absolute lifetime Internet ban constituted a plain error in sentencing after *Duke*).

No. 23-50449

The special conditions here largely mirror those in *Duke* and *Scott*. So in accordance with our rule of orderliness, we are bound to hold that the district court abused its discretion by failing to narrowly tailor the Internet-restricting special conditions.

We therefore AFFIRM Nelson's sentence as to all but the special conditions of supervised release. We VACATE the Internet-related special conditions and REMAND for further proceedings.

No. 23-50449

ANDREW S. OLDHAM, *Circuit Judge*, concurring:

I agree with the majority's application of our precedents to this case. I write separately to express concern about those precedents, however. We have defined total internet bans as *per se* unreasonable conditions on supervised release. That was wrong, as this case illustrates.

I

Nelson's crimes were horrific. Nelson possessed—among other atrocities—the following:

- An image "of a nude minor female, posing in a bent over position. Her body is facing away from the camera, and her head is turned back around to face the camera. The young girl's buttocks, vagina and anus are prominently displayed as the focal point of the photo." ROA.121.

- An image "of a pubescent minor female, posing in black, white, and red lingerie. The young girl's underwear are pulled down and her vagina is exposed." ROA.122.

- At least two images "of a nude minor male. The young male is laying on his back. His wrists and ankles are bound together, and his mouth is gagged. The focal point of the photograph is the boy's buttocks area, where a foreign object has been inserted into his anus." ROA.122.

- "[A] two-minute video in which three nude, minor females are engaged in oral sex, including mouth-to-mouth, mouth-to-breast, and mouth-to-vagina." ROA.122.

Several images also depicted Nelson's own daughters. In one instance:

> "[A]gents discovered images clearly showing a child's hand(s) touching the defendant's penis and other images show the defendant placing his penis near the victim's female sex organ and other images show the defendant apparently masturbating

while the child victim's buttocks is exposed. These images were attributed the defendant's 5-year-old daughter."

ROA.125.

For reasons that are not immediately obvious, the Government chose to charge Nelson with only one count of possession of child pornography. *See ante*, at 1. The district court (correctly) gave Nelson the statutory maximum, 20 years in prison, for that one count. And the court (correctly) gave Nelson a lifetime supervised-release term.

When Nelson gets out of prison, he will face a host of restrictions imposed by the Texas Legislature and Congress. He will most likely never vote again. *See* Tex. Elec. Code § 13.001(a)(4) (conditioning voter eligibility on the full discharge of a sentence, including supervision). He will never legally possess a firearm. *See* 18 U.S.C. § 922(g)(1). He will have to register as a sex offender, with all the movement, location, and activity restrictions that label entails, *see* 34 U.S.C. § 20913, and he will have to allow probation officers to search his home any time they have a "reasonable basis" to do so, ROA.114–15.

## II

Congress also empowered the district court, in its discretion, to impose conditions on Nelson's supervised release. *See* 18 U.S.C. § 3583(d). Section 3583(d) allows the district court to impose *any* supervised-release condition that:

> (1) is reasonably related to the [sentencing] factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

*Ibid.*[1] As § 3583(d)'s text makes clear, district courts have "wide discretion in imposing terms and conditions of supervised release." *United States v. Caravayo*, 809 F.3d 269, 276 (5th Cir. 2015) (per curiam) (quotation omitted). They have used that discretion to impose a whole host of different, case-specific discretionary conditions on supervised release. In *United States v. Duke*, 788 F.3d 392 (5th Cir. 2015), however, we held that one thing a district court can *never* do under § 3583(d) is impose a categorical internet ban.

I see at least three problems with *Duke*. First, it is internally contradictory. Section 3583(d)(2) requires a district court to narrowly tailor its supervised release conditions. Congress vested that discretion in district courts because Congress trusted district courts to supply the requisite tailoring on a case-by-case basis, as the facts and circumstances required. In *Duke*, however, we took away the discretion Congress vested on the rationale that "unconditional, lifetime ban[s are] the antithesis of a narrowly tailored sanction." 788 F.3d at 399 (quotations omitted). That is, in the name of narrow tailoring, and for fear of overbroad remedies, we created our own overbroad remedy that is the antithesis of narrow tailoring—we took away the district courts' discretion vested by § 3583(d).

Second, Nelson's crimes demonstrate exactly how a total internet ban could be reasonably related to a defendant's crime *and* as narrow as possible to protect the public—indeed, to protect *children*—from future harm. Nelson's crimes revolved around his use of the internet. So there can be no

_____

[1] Section 3583(d) contains certain other restrictions on supervised release, none of which is relevant here.

question about the relatedness of the sentence. And the district court's lifetime ban on Nelson's internet use *is* narrowly tailored to promote one of the enumerated goals—public protection—without restricting more liberty than necessary. Simply put, there is no way to guarantee that Nelson will not engage in producing, buying, or selling child pornography if he has *any* access to the internet. Even the so-called "innocent purposes" outlined in *Duke*— "paying a bill online, taking online classes, or video chatting and emailing with his family"—create gaps for potential harm. *Duke*, 788 F.3d at 400; *see also Packingham v. North Carolina*, 582 U.S. 98, 111–12 (2017) (Alito, J., concurring in the judgment). For example, Nelson could use online banking to finance his criminal sales and purchases. Nelson could use online communications to arrange the transfer of images, even if the images themselves were blocked. And, perhaps most importantly, seemingly innocent internet uses—like email—could provide Nelson access to his children, the very victims of his crimes. Even with monitoring software and other protections, so long as Nelson has internet access in some capacity, there will be some threat of future crime. And all of these are circumstances that district courts should be able to consider in fashioning supervised-release conditions under § 3583(d).

Third, it is true but irrelevant that "computers and the internet have become significant and ordinary components of modern life as we know it." *Duke*, 788 F.3d at 400 (quotation omitted). There are plenty of modern conveniences that felons sacrifice when they go to jail or serve supervised-release terms. In fact, there are plenty of *constitutional rights* that felons must sacrifice—sometimes for life. For example:

- The right to vote has been described as "fundamental." *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 670 (1966). But Nelson forfeited that right by engaging in this criminal conduct. *See* Tex. Elec. Code § 13.001(a)(4); *see also Richardson v.*

No. 23-50449

*Ramirez*, 418 U.S. 24 (1974) (upholding such restrictions against constitutional challenge).

- The home is "the most private and inviolate . . . of all the places and things the Fourth Amendment protects." *Florida v. Jardines*, 569 U.S. 1, 13 (2013) (Kagan, J., concurring); *see also Payton v. New York*, 445 U.S. 573, 585 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (citation omitted)). But Nelson's sentence gives probation officers "unmitigated access" to his home, provided the officers have just a "reasonable basis" to search the residence. ROA.114–15; *see also United States v. Knights*, 534 U.S. 112 (2001) (upholding such a condition imposed upon a probationer against constitutional challenge); *Samson v. California*, 547 U.S. 843, 850 (2006) (upholding *suspicionless* search of parolee against constitutional challenge while noting that "parolees have fewer expectations of privacy"); *United States v. Winding*, 817 F.3d 910, 916 (5th Cir. 2016) ("Supervised release is akin to parole.").

- Nelson's right to possess a firearm is constitutionally protected. *See* U.S. Const. amend. II. But the U.S. Code itself circumscribes that right for all felons. *See* 18 U.S.C. § 922(g)(1). And that prohibition is "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 627 n.26 (2008); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (explaining *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons'" (quoting *Heller*, 554 U.S. at 626–27)); *see also United States v. Williams*, No. 23-6115, 2024 WL 3912894 (6th Cir. Aug. 23, 2024) (Thapar, J.) (holding § 922(g)(1) facially constitutional).

- The right to travel supposedly "belong[s], of right, to the citizens of all free governments." *Corfield v. Coryell*, 6 F. Cas. 546, 551–52 (C.C.E.D. Pa. 1823) (Washington, J.) (No. 3,230);

*see also Saenz v. Roe*, 526 U.S. 489, 500–01 & n.14 (1999) (calling the right to travel "fundamental" on authority of *Corfield v. Coryell*). Yet the Sex Offender Registration and Notification Act imposes severe restrictions on that right. *See* 18 U.S.C. § 2250 (failure to register travel); *see also United States v. Byrd*, 419 Fed. App'x 485, 491–92 (5th Cir. 2011) (upholding this provision against constitutional challenge).

All of these burden "significant and ordinary components of modern life as we know it." *Duke*, 788 F.3d at 400 (citation omitted). But none of them—save Nelson's right to access the very internet he used to prey on minors—is categorically beyond the reach of supervised release.

III

The Supreme Court's decision in *Packingham* is not to the contrary. In that case, the Supreme Court held the First Amendment prohibited North Carolina from making "it a felony for a registered sex offender" to access "social media websites." *Packingham*, 582 U.S. at 101. True, the State had a significant governmental interest in protecting children and other victims of sex abuse. *See id.* at 106. But the law failed narrow tailoring because North Carolina enacted "a prohibition unprecedented in the scope of First Amendment speech it burdens." *Id.* at 107. "[T]o foreclose access to social media altogether [was] to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 108. The State could not, therefore, "enact this complete bar to the exercise of First Amendment rights on websites integral to the fabric of our modern society and culture." *Id.* at 109.

*Packingham* is distinguishable for three principal reasons. First, a restriction imposed on a single individual at sentencing is much more narrowly tailored than a general law like the one in *Packingham*. North Carolina's law forbade *all* registered sex offenders from accessing social

media. *See* N.C. Gen. Stat. Ann. § 14-202.5(a) (2009). That included "about 20,000 people in North Carolina," over 1,000 of whom the State had prosecuted. *Packingham*, 582 U.S. at 102. A supervised-release condition on internet use, by contrast, applies to *precisely one* person. In other words, just because North Carolina's off-the-rack, one-size-fits-all law failed narrow tailoring does not even suggest that a bespoke sentence tailored to one pedophile must too.

Second, *Packingham* itself cajoled courts to "exercise extreme caution" before rendering sweeping pronouncements concerning the interplay between the First Amendment and the internet. *Id.* at 105. And the Court acknowledged that its holding regarding the North Carolina law should not be read to invalidate all internet restrictions upon pedophiles. *See id.* at 107. Thus, *Packingham* cannot be mechanically applied to supervised-release conditions.

Third, the governmental interests at issue in supervised release and in *Packingham* are different. The law in *Packingham* imposed a forward-looking criminal restriction on people who had already served their sentences. The Court thus emphasized "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system . . . ." *Ibid.* Supervised release, by contrast, is part of the pedophile's sentence and is part of the punishment the Government can impose for Nelson's heinous crimes. *Cf. id.* at 106 ("[S]exual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." (citation omitted)). Thus, supervised release implicates the government's retributive interests in ways that *Packingham* did not.

*       *       *

Imagine that instead of using a computer and an internet connection to victimize his own children and destroy their lives, Nelson instead used a gun to execute them. Would anyone say the Constitution facially prohibits all lifetime bans on all felons, including child murderers? Obviously not. *See, e.g.*, *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) (holding § 922(g)(1) is constitutional at least as applied to those convicted of a "drive-by-shooting, carjacking, armed bank robbery, or even assassinating the President of the United States"). Even the Ninth Circuit panel that found constitutional problems with some applications of § 922(g)(1) nonetheless also found the statute could be applied to those who committed traditional, violent felonies. *United States v. Duarte*, 101 F.4th 657, 689–90 (9th Cir. 2024), *vacated & reh'g en banc granted*, 108 F.4th 786 (9th Cir. 2024); *see also United States v. Price*, 111 F.4th 392, 413 (4th Cir. 2024) (Agee, J., concurring in the judgment) ("[N]o federal court has accepted the extraordinary claim that § 922(g)(1) is . . . unconstitutional in *all* its applications."). Thus, even the most zealous skeptics of gun bans recognize the Constitution allows at least some of them.

So too with lifetime internet bans. For *Duke* to be wrong, there just needs to be one individual in this vast, populous Nation who merits a lifetime internet ban. And there is at least one: Christopher Dallas Nelson. Unlike a firearm ban (which would leave Nelson with virtually no Second Amendment freedoms), an internet ban would leave Nelson with all the First Amendment freedoms of someone alive in the 1970s: He could visit the local library, go to church, read Marx, watch Kurosawa, listen to Bach, discuss Hinduism, study Arabic, write about the French Revolution, &c. But like a firearm ban, an internet ban would take from him the weapon he used to hurt children. The fact that other internet bans imposed on other people in other circumstances might be overbroad is of no moment. That is because § 3583(d) allowed this district judge to impose this ban on this man. *Duke* should be overruled.

No. 23-50449

Priscilla Richman, *Chief Judge*, concurring in part and dissenting in part:

I agree that the district court did not abuse its discretion by denying Nelson a sentencing reduction for acceptance of responsibility. I disagree that there is a conflict between the written judgment and the oral pronouncement with respect to the restrictions on Nelson's Internet use.

When a term of the district court's written judgment "conflicts with the oral sentence, the oral sentence controls."[1] But, to invoke that rule, there must be a genuine conflict between the oral sentence and the written judgment.[2] A conflict exists only when the written judgment "broadens the restrictions or requirements of supervised release from an oral pronouncement,"[3] or imposes conditions "more burdensome" than the oral pronouncement.[4]

As the majority opinion recognizes, the written judgment's restriction on Nelson's Internet use was "*less* severe" than the oral pronouncement's.[5] The oral pronouncement prohibited Nelson from using any device capable of

---

[1] *United States v. Baez-Adriano*, 74 F.4th 292, 302 (5th Cir. 2023) (citing *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020) (en banc)).

[2] *See, e.g.*, *id.* at 303.

[3] *Id.* at 303 (emphasis added) (quoting *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006)); *accord United States v. Woods*, 102 F.4th 760, 767 (5th Cir. 2024); *United States v. Pelayo-Zamarripa*, 81 F.4th 456, 460 (5th Cir. 2023); *United States v. Prado*, 53 F.4th 316, 318 (5th Cir. 2022); *United States v. Bigelow*, 462 F.3d 378, 383-84 (5th Cir. 2006).

[4] *Woods*, 102 F.4th at 767.

[5] *Ante* at [2] (emphasis added).

14

accessing the Internet, while the written judgment permits Internet access with advance parole-officer approval.[6]

The reasoning in an unpublished decision, *United States v. De Leon*, is persuasive.[7]  There, the district court ordered defendant De Leon to pay restitution in its oral pronouncement.[8]  The written judgment imposed joint-and-several liability with other defendants, even though the district court had not orally pronounced joint and several liability.[9]  We reasoned that "the inclusion of joint-and-several[ ]liability neither broaden[ed] the burden of the condition of supervised release nor impose[d] a more burdensome requirement" because "De Leon could only benefit from the shared liability included in the written judgment."[10]  We therefore held that there was no conflict.[11]

The same result should obtain here.  The written judgment's less severe restriction on Nelson's Internet use only benefitted Nelson.  The written judgment did not "broaden[] the restrictions or requirements of supervised release"[12] or "impos[e] a more burdensome requirement."[13]  Accordingly, there is no conflict.  Because I would affirm, I respectfully dissent.

_____

[6] *Compare* ROA.113 (oral pronouncement), *with* ROA.49 (written judgment).

[7] No. 22-40301, 2024 WL 140439 (5th Cir. Jan. 12, 2024) (per curiam) (unpublished).

[8] *Id.* at *1.

[9] *Id.* at *4.

[10] *Id.* at *5.

[11] *Id.* at *4-*5.

[12] *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006).

[13] *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006).