**REVISED March 13, 2017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-50174

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CHANDA HUOR, also known as Kevin Thorn,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

REAVLEY, Circuit Judge:

Chanda Huor was convicted of failure to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"). His sentence included a prison term followed by ten years of supervised release during which he would be subject to various conditions. His appeal challenges five of the conditions imposed. We find the district court acted within its discretion by imposing a special condition requiring Huor to undergo sex offender treatment but abused its discretion by imposing a special condition prohibiting purchase, possession, or use of sexually stimulating materials. The district court also

erred, as a matter of law, by imposing a special condition requiring the defendant to "follow all other lifestyle restrictions . . . imposed by the therapist." Further, the judgment must be reformed to omit a special condition prohibiting Huor from "residing or going to places" frequented by minors without permission from his probation officer because that special condition was not pronounced orally at sentencing. Similarly, the judgment must be reformed to omit a "standard" sex offender treatment condition that largely overlaps with, but materially differs from, the similar "special" condition that was orally pronounced at sentencing and included separately in the written judgment.

In light of our rulings, only the treatment condition will stand. The defendant also challenges a discrete aspect of this condition, which provides: "After an initial evaluation if the doctor finds that treatment isn't necessary and the defendant is not a danger, the Court will amend and abate this special condition of supervised release." Because the district court retained its power to sentence the defendant and did not improperly delegate it to the doctor, we uphold this aspect of the treatment condition.

## I.    BACKGROUND

In 1998, at the age of 16, defendant Chanda Huor pleaded guilty to raping a four-year-old girl. In addition to a lengthy prison sentence, he was required to register as a sex offender for life. Huor got out of prison in 2005. Since then, he has updated his registration several times but not with the diligence required by law; he has multiple failure-to-register convictions.

Huor updated his registration with the Virginia State Police in early 2013. In March of that year, he moved to San Antonio, Texas and did not update his registration. When the deadline to do so passed, a warrant for Huor's arrest issued out of Virginia. U.S. Marshals eventually tracked him to Texas, where he had moved to be with a girlfriend. After the relationship

ended, he lived with a woman named Crystal Quesada and her eight-year-old son for nearly a year. Marshals contacted Quesada and learned that she knew Huor as Kevin Thorn. They did not find Huor until several days later. When they did, he was living with a new girlfriend and her two young daughters. This third girlfriend, Rosemary Valdez, was unaware that Huor was a convicted sex offender and also knew him as Kevin. Huor was at Valdez's residence when the Marshals arrived and was arrested without incident.

Huor was charged in a one-count indictment with violating 18 U.S.C. § 2250(a) as a person required to register under SORNA who had traveled in interstate commerce and knowingly failed to register or update his registration. He pleaded guilty. The district court sentenced Huor to 24 months of imprisonment and ten years of supervised release. Much of the sentencing hearing concerned the propriety of sentencing conditions, particularly the requirement that Huor undergo sex offender treatment and the ban on sexually stimulating materials. The district court acknowledged that Huor had not committed any sex offenses since being released from prison and had indeed shown no "propensity at least in the last ten years . . . to reengage in the kind of behavior that put him where -- where he is today."

Huor's counsel objected to the sex offender treatment condition. The district court explained that it was imposing the special condition primarily because Huor had lied to two different women, earned a place in those women's homes by the deceit, and thereby placed himself under the same roof as small children. This combination of events, a scenario SORNA is specifically designed to prevent, satisfied the district court that Huor required continuing sex offender treatment. In response to Huor's objection, however, the district court agreed that such treatment may be unnecessary and qualified the special condition as follows: "I'm going to amend that condition, at this time, to require that he undergo at least an initial evaluation, and if the psychiatrist or

3

psychologist believes that under the circumstances a -- further treatment is not necessary, then I will amend and abate the condition." This "initial evaluation qualification" is challenged on appeal along with the special condition itself.

Huor's counsel also objected to the special condition prohibiting sexually stimulating materials. When Huor's counsel noted the absence of any link to pornography in Huor's case, the district court replied, "No, he didn't have child pornography. He just raped a four year old." The district court also relied on evidence heard in prior cases that sexually stimulating materials contribute to recidivism in pedophiles. The special condition, however, was amended and made subject to the initial evaluation qualification.

Other conditions imposed at sentencing provoked no objection. Pertinent here, Huor's counsel did not object to a condition requiring Huor to "follow all other lifestyle restrictions or treatment requirements approved by the therapist, psychiatrist, or psychologist and continue those restrictions as they pertain to avoiding risk situations throughout the course of his supervision." And the written judgment, when handed down, included another special condition to which Huor's counsel had no opportunity to object—a special condition prohibiting Huor from "residing or going to places" frequented by minors without permission from his probation officer. The written judgment also included, as "Standard Condition 14," sex offender treatment largely redundant of the sex offender treatment separately imposed as a special condition but lacking the "initial evaluation qualification." Huor timely appealed.

4

## II.    DISCUSSION

### A.    Standard of Review and Essential Law

When challenged on appeal, conditions of supervised release are reviewed for an abuse of discretion. *United States v. Morin*, 832 F.3d 513, 516 (5th Cir. 2016).

> [S]uch conditions must be reasonably related to one of the following statutory factors: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need to afford adequate deterrence to criminal conduct; (iii) the need to protect the public from further crimes of the defendant; and (iv) the need to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.

*United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014) (citing 18 U.S.C. § 3553(a)(1)–(2)).

Supervised release conditions must be "reasonably related to any of the four factors" and "cannot involve a 'greater deprivation of liberty than is reasonably necessary' to achieve the statutory goals." *Id.* (quoting *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001)). Sentencing courts have an obligation to explain why each special condition has been imposed. *Id.*

To the extent Huor challenges conditions to which he did not object at sentencing, we review only for plain error. *See id.* at 448. To satisfy this standard of review, Huor "must show '(1) an error (2) that is clear or obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Mendoza-Velasquez*, Case No. 16-40194, 2017 WL 414363, at *2 (5th Cir. Jan. 30, 2017) (quoting *United States v. Nava*, 762 F.3d 451, 452 (5th Cir. 2014)). He bears the burden as to each of these four questions, and carrying that burden "is difficult, as it should be." *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 1429 (2009)).

5

## B. The "Treatment Condition"

Huor's first challenge is to the treatment condition. He argues that treatment is "unnecessary" and not supported by findings reasonably related to the § 3553(a) factors. We disagree. The district court adequately articulated why the treatment condition is reasonably related to the nature and circumstances of Huor's crime, the need to protect the public from further crimes, and the need to provide Huor with treatment. *See* 18 U.S.C. § 3553(a)(1)–(2).

The district court explained: "the reason for the imposition . . . is his false—and lying to these women and resulting in his placing himself within a home with small children." The district court was concerned because Huor's failure to register led to precisely the risk of harm that SORNA is designed to prevent—a convicted sex offender living in a home with small children under a false name and without informing the children's mother of his past. Huor previously raped a small child and has since violated SORNA with the consequence (and perhaps purpose) of embedding himself into the household of a woman with small children. The district court determined, based on this specific conduct, that sex offender treatment was warranted, and this determination was not an abuse of discretion.

Huor also challenges, on appeal, the initial evaluation qualification, which provides that "[a]fter an initial evaluation if the doctor finds that treatment isn't necessary and the defendant is not a danger, the Court will amend and abate this special condition of supervised release." There being no objection at sentencing to this aspect of the special condition, our review is for plain error.

It is proper for a court to decide that "the manner and means" by which a condition of supervised release is implemented may be determined by a probation officer or therapist. *Morin*, 832 F.3d at 516–17. A court may not,

however, delegate the duty of determining whether a condition will be imposed at all. *See id.* at 518. Rather, the court must "retain and exercise ultimate responsibility" for that sentencing decision. *Id.* (quoting *United States v. Mickelson*, 433 F.3d 1050, 1056 (8th Cir. 2006) (alterations omitted)). Thus, for example, giving a therapist power to impose "lifestyle restrictions" on a defendant "[w]ithout the supervision of the district court" represents a violation, but there is no violation if the district court retains a supervisory role. *See id.*

In *Morin*, we rejected a special condition that required the defendant to "follow all other lifestyle restrictions or treatment requirements *imposed by the therapist*, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision." *Id.* at 515–17 (emphasis added). In *United States v. Lomas*, the challenged special condition required the defendant "to participate in a mental health program *as deemed necessary and approved by the probation officer*," and we vacated and remanded for clarification, instructing that if the district "court intends to leave the issue of the defendant's participation in therapy to the discretion of the probation officer, such a condition would constitute an impermissible delegation of judicial authority and should not be included." 643 F. App'x 319, 324–25 (5th Cir. 2016) (per curiam) (emphasis added). *Lomas* was recently followed in a published opinion, *United States v. Franklin*, 838 F.3d 564 (5th Cir. 2016). In all three cases, we focused on the wording of the condition in determining its propriety. *Morin*, 832 F.3d at 517 (reviewing the condition "as presently constructed"); *Lomas*, 643 F.App'x at 322 (focusing on the "wording" of the special condition at issue); *Franklin*, 838 F.3d at 567 (same).

Huor's arguments largely ignore the actual wording of the written judgment, imbuing the reviewing doctor with sentencing power not reflected in the judgment. Thus, Huor argues that "the conditions take effect, by default,

7

if a doctor finds that treatment is necessary," that the "conditions take effect even if the doctor is undecided about the necessity for treatment," that the "conditions abate only upon a finding that treatment is unnecessary," and that "[e]ither way, it is the doctor who has the power to decide whether Huor will be subject to" the special conditions. Not so.

It is the district court that "will amend and abate this special condition of supervised release" if a "doctor finds that treatment isn't necessary and the defendant is not a danger." Thus, the district court has retained ultimate supervisory power as required by *Morin*, 832 F.3d at 518; *see also Mickelson*, 433 F.3d at 1056 ("Conditions delegating limited authority to non judicial officials . . . are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility."). It is the district court that does the sentencing, and that is all Article III requires.

While the judgment's wording rightly preserves the judiciary's power to impose the sentence, its if/then structure creates the concerning impression that the judge may act as an automaton upon receiving the findings of the doctor. "[P]reserving the judiciary's exclusive authority to impose sentences is an area in which it is important for courts to be vigilant." *Morin*, 832 F.3d at 518. We have held that the district court committed no improper delegation precisely because it did not delegate the power to sentence. We emphasize that the district court must retain that power in a meaningful way. "[I]n every delegation, the court must retain the right to review findings and to exercise ultimate authority for resolving the case or controversy." *United States v. Johnson*, 48 F.3d 806, 809 (4th Cir. 1995). The judge's role must not be reduced to the clerical; the doctor's role must not be elevated to the judicial. Under our reading of the special condition, the doctor makes findings on the necessity of treatment and danger of the defendant, and the judge retains the authority and responsibility to review the doctor's findings and to adjust the sentence if,

8

in its considered view, the findings so merit. *See id.* ("It has long been recognized that courts may utilize masters and commissioners in connection with factfinding, and the Supreme Court has affirmed Congress' delegation of factfinding functions to an administrative agency.").

### C. The "Sexually Stimulating Materials Condition"

Huor also challenges the sexually stimulating materials condition requiring the defendant to "refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as, pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same." Relying primarily on *Salazar*, he contends that the record does not support a prohibition of sexually stimulating materials.

Our analysis starts with the reasons given by the district court and analysis of their relationship to the § 3553(a) factors. As mentioned previously, the district court imposed the sexually stimulating material condition because Huor previously raped a small child and because, from evidence presented in prior cases, the district court was concerned that sexually stimulating materials may contribute to recidivism in pedophiles. The first of these reasons bears an inadequate relationship to the statutory factors. The second reason reflects a failure to tailor the special condition to the individual defendant and is unsupported by the record.

The sexually stimulating materials condition was imposed, in part, because Huor "raped a four-year-old." This rationale relates to the first § 3553(a) factor, the nature and circumstances of the offense and the history and characteristics of the defendant. "[A] special condition that is not related to the crime of conviction will nevertheless be upheld as long as it is justified by a defendant's criminal history," and it is therefore proper to consider Huor's

9

1998 rape conviction. *Salazar*, 743 F.3d at 452. Under *Salazar*, however, that "singular and now-remote sexual offense" does not justify a ten-year sexually stimulating materials condition. *See id.*

Like Huor, the defendant in *Salazar* had been convicted of one sex-related offense years prior—a conviction that subjected him to SORNA's registration requirements. *Id.* at 447. And like Huor, the conviction leading to imposition of supervised release and the concomitant sexually stimulating materials condition was failure to register. *Id.* As here, "[n]othing in Salazar's history suggest[ed] that sexually stimulating materials fueled his past crimes," and there was no evidence that Salazar was "a repeat offender of sex crimes or that access to pornographic materials contributed to his original offense." *Id.* at 452. Indeed, Huor was only 16 at the time of his crime, and the only evidence regarding its catalyst is that he was himself the victim of a similar crime when he was 5 years old. Neither the past offense, nor the new conviction, nor the two of them considered in tandem, "justify the imposition of this restriction." *Id.*; *see also United States v. Windless*, 719 F.3d 415, 422 (5th Cir. 2013).[1]

The district court explained the second reason for imposing a sexually stimulating materials condition: based on testimony heard in other cases, "exposure to sexually explicit materials for these kinds of individuals can in fact result in an acceleration of [the] process" toward recidivism. This rationale can be classified as deterrence, protection of the public, and therapeutic—the

---

[1] *Windless* was decided on the grounds that the challenged condition of supervised release involved a greater deprivation of liberty than was reasonably necessary to achieve the statutory aims. 719 F.3d at 422. *Salazar* did not reach that question, instead finding the challenged condition not reasonably related to any of the four factors. *See* 743 F.3d at 451. While Huor has argued both points, our decision rests on the relationship between the condition and the statutory factors. *Windless* took a different analytical approach but is illuminating nonetheless.

final three § 3553(a) factors. Nonetheless, on this record, imposition of the special condition fails to pass muster.

"[S]pecial conditions must be tailored to the individual defendant and may not be based on boilerplate conditions imposed as a matter of course in a particular district." *United States v. Caravayo*, 809 F.3d 269, 276 (5th Cir. 2015) (per curiam). Thus, district courts are required "to set forth factual findings to justify special probation conditions." *Salazar*, 743 F.3d at 451 (quoting *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999)). "Factual findings made in support of a sentencing determination must be supported by a preponderance of the evidence." *United States v. McCaskey*, 9 F.3d 368, 372 (5th Cir. 1993). This includes factual determinations justifying conditions of supervised release. *See Windless*, 719 F.3d at 420.

Early in the sentencing hearing, the district court stated that it did not "know whether [Huor] would be classified as a pedophile or not." Nonetheless, it went on to discuss how "[t]hey're notoriously hard to treat and have a pretty high recidivism rate from all the testimony I've heard over the many years from psychiatrists and psychologists and those who treat sex offenders." The district court returned to this topic when justifying the sexually stimulating materials condition:

> I've -- over the years, I've heard testimony from psychiatrists and psychologists, I can't even begin to tell you how many times, about how these individuals who have these predilections, it's very difficult to treat them. There's a very high recidivism rate, and that exposure to sexually explicit materials for these kinds of individuals can in fact result in an acceleration of that process.

The district court's approach is not the "tailored," individualized approach required by the law. *See Caravayo*, 809 F.3d at 276. Rather, the district court based his sentencing decisions on evidence heard in other cases— evidence with uncertain relevance to Huor. In short, the district court

sentenced Huor *as a pedophile* after acknowledging uncertainty regarding whether Huor actually *is a pedophile*. This was error. The factual basis supporting the special condition was not supported by a preponderance of the evidence. *See Windless*, 719 F.3d at 420. Indeed, the district court acknowledged that many of the facts it considered most important in imposing the sexually stimulating materials condition—whether Huor would be classified as a pedophile, whether Huor was "regressing," whether viewing pornography would contribute to his risk of recidivism—were unknown at the sentencing hearing. Conditions of supervised release must be "narrowly tailored" and supported by the record. *United States v. Duke*, 788 F.3d 392, 403 (5th Cir. 2015). The sexually stimulating materials condition is neither and cannot stand.

The government's meager defense of the sexually stimulating materials condition only confirms our ruling. The government distinguishes *Salazar* primarily on the basis that *Salazar* "concluded that the district court erred by not explaining how the supervised release condition was reasonably related to the goals of supervised release," whereas here "the district court identified and explained its reasons for imposing the special conditions and how they related to the goals of supervised release." An explanation is necessary, but it is not sufficient. Thus, *Salazar* did more than vacate and remand for lack of an explanation; it also found that the record could not support imposition of the sexually stimulating materials condition. *See* 743 F.3d at 452–53. Here, the district court gave reasons, but they were inadequate under *Salazar* and other cases, and our review of the record yields "insufficient evidence of a reasonable relationship between the condition and the statutory factors." *Id.* at 453.

The government also points out that, unlike Salazar, Huor previously violated the terms of his parole by viewing pornography. Thus, this case is closer than *Salazar*: it cannot be said of Huor (as it was of Salazar) that there

is "no indication in the record [of] an unhealthy relationship with such materials" and no evidence that he "ever used pornography." *Id.* at 452. Nonetheless, a defendant's right to possess and view sexually stimulating materials is not defeated by evidence that the defendant has in fact viewed sexually stimulating materials. While it is worrisome that Huor violated the terms of his parole to view such material, it remains "hard to imagine how preventing [Huor] from accessing sexually stimulating materials would prevent future criminal conduct." *See id.* Conditions of supervised release must serve the purposes of § 3553(a) and may not merely represent stumbling blocks.

The district court did not mention Huor's past pornography-related parole violation as a basis for imposing the sexually stimulating materials condition, and this is not a case where "clear evidence in the record" allows us to conclude that the condition "was reasonably necessary." *See Caravayo*, 809 F.3d at 276. On remand, the district court is free to consider the past parole violation in view of the § 3553(a) factors when deciding whether to re-impose the special condition.

The government's remaining arguments in support of the sexually stimulating material condition are generic and lack merit. The government contends that "given Appellant's designation as a 'violent sex offender' and the court's desire to deter him from this conduct in the future, the condition prohibiting him from access to sexually stimulating material was not an abuse of discretion." Similarly, it argues that "because Appellant had committed a crime that was sexual in nature it was reasonable for the district court to restrict Appellant's access to sexually stimulating material in an effort to prevent future crimes or aid in his rehabilitation." These blanket arguments were rejected in *Salazar*, *see* 743 F.3d at 450–51, and are inconsistent with the individualized approach the law requires, *see Caravayo*, 809 F.3d at 276.

The primary case upon which the government relies, *United States v. McGee*, 559 F.App'x 323 (5th Cir. 2014), is unpublished and distinguishable. In a footnote, *McGee* acknowledged that *Salazar* involved "a similar special condition imposed in a SORNA failure-to-register case" but nonetheless found the condition warranted. *Id.* at 330 n.33. The difference, we explained, was that the defendant McGee had a "significant criminal history involving several sexual assaults and his pattern for quickly reoffending following release." *Id.* Huor's offense was grave and disturbing, but it is the "singular and now-remote sexual offense" of *Salazar* rather than the multiple offenses of *McGee*. *Salazar* is far more similar to this case than is *McGee*. *See also United States v. Prieto*, 801 F.3d 547, 552–53 (5th Cir. 2015) (per curiam) (discussing *Salazar* and *McGee*). Other cases cited by the government fare no better. The government points us to *United States v. Ellis*, 720 F.3d 220 (5th Cir. 2013) (per curiam). But *Ellis* involves a defendant who was tried and convicted *for possession of child pornography*. 720 F.3d 220 at 223. Unlike the defendant in *Ellis* and just like the defendant in *Salazar*, "[n]othing in [Huor's] history suggests that sexually stimulating materials fueled his past crimes" and there is no evidence "that access to pornographic materials contributed to his original offense."[2] *Salazar*, 743 F.3d at 452. Finally, the government cites *United States v. Weatherton*, 567 F.3d 149 (2009). That case involved the plain error standard of review and a defendant with a "lengthy history" of crime including multiple violent sex offenses. *Id.* at 151, 154. It does not aid the government.

## D.    Delegation and Plain Error

We return to Article III's prohibition on the delegation of core judicial functions. According to Huor, the district court erred by imposing a special condition requiring the defendant to "follow all other lifestyle restrictions or

---

[2] In *Prieto*, as here, we distinguished both *McGee* and *Ellis*. *See* 801 F.3d at 552–53.

treatment requirements imposed by the therapist, and continue those restrictions as they pertain to avoiding risk situations throughout the course of supervision." Because he did not object to this condition at sentencing, our review is for plain error.

The challenged condition is identical to the condition found impermissible in *Morin*. Accordingly, there is error, and it is plain. *See Morin*, 832 F.3d at 518; *see also United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) (en banc) ("[W]here the law is unsettled at the time of trial but settled by the time of appeal, the 'plainness' of the error should be judged by the law at the time of appeal."). Further, under *Prieto*, we "easily conclude that the district court's error affected [Huor's] substantial rights" because "[h]ad the error not occurred, [Huor] would not have been subjected to the unwarranted special condition." 801 F.3d at 553. *Morin* also establishes the requisite effect on Huor's substantial rights. *See* 832 F.3d at 517 (explaining that the condition "extends to a therapist the authority to impose, without court review, independent conditions of supervised release that might extend beyond the period of supervised release and that could serve as the basis for violations of the terms of supervised release separate and apart from non-compliance with the treatment program").

The only remaining question is "whether the error affects 'the fairness, integrity, or public reputation of judicial proceedings' such that the appellate court should exercise its discretion to correct the error." *Escalante-Reyes*, 689 F.3d at 425 (quoting *Puckett*, 556 U.S. at 135, 129 S.Ct. at 1429). Here we confront a judgment that cedes the judiciary's exclusive sentencing power to a therapist. Such an error necessarily "undermines the integrity of the judicial proceedings." *United States v. Renteria-Martinez*, Case No. 16-50033, 2017 WL 465299, at *4 (5th Cir. Feb. 2, 2017).

Given the error's stark impact on the fairness, integrity, and public reputation of judicial proceedings, we will exercise our discretion to correct it. In doing so, we are not alone. *See United States v. Pitts*, Case No. 15-50850, 2016 WL 6832953 (5th Cir. Nov. 18, 2016) (per curiam) (correcting, on plain error review, an identical error involving the same special condition); *see also United States v. Alaniz*, Case No. 16-40321, 2016 WL 7187378, at *2 (5th Cir. Dec. 9, 2016) (per curiam) ("Because such an error involves 'core judicial functions,' *see Franklin*, 838 F.3d at 568, we find the exercise of this court's discretion to correct the error is warranted under these circumstances.").

### E.    Conflicts Between the Oral Pronouncement at Sentencing and the Written Judgment

The written judgment includes a special condition prohibiting Huor from "residing or going to places" frequented by minors without permission from his probation officer. This condition was not announced at sentencing. Defendants have a constitutional right to be present at their sentencing, and the government concedes that the judgment must be reformed to conform to the oral sentence. *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001) (per curiam) ("[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls.").

The same body of law governs Huor's next argument, that Standard Condition 14 conflicts with the oral sentencing. As a general rule, standard conditions need not be orally pronounced. *See United States v. Torres-Aguilar*, 352 F.3d 934, 936 (5th Cir. 2003). This rule, however, does not resolve the issue. Huor's argument is not premised on the notion that the standard condition was unannounced and therefore necessarily conflictual with all that was pronounced. *See, e.g.*, *Martinez*, 250 F.3d at 942 ("The district court's failure to mention mandatory drug treatment in its oral pronouncement constitutes a conflict, not an ambiguity."). Huor's argument is that Standard

Condition 14 conflicts with the sex offender treatment as pronounced (and "amend[ed]") at sentencing. In Huor's view, this is not a case where "[t]he written judgment simply clarifie[s] the meaning of that sentence by specifying what the supervision [is meant] to entail.'" *Torres-Aguilar*, 352 F.3d at 938 (alterations in original) (quoting *United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002)). Rather, this is a case where the written judgment muddles the picture. We agree with Huor. The special conditions are nearly redundant but not quite identical, and only the orally pronounced condition should be part of the written judgment.

The Government argues that if the conditions are read together, there is no conflict because the sex offender treatment required by Standard Condition 14 is necessarily contingent on the initial evaluation qualification included in the special treatment condition. This argument would prevail if we perceived ambiguity rather than conflict. *See United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006) ("If . . . the difference between the [the oral pronouncement and the written judgment] is only an ambiguity, we look to the sentencing court's intent to determine the sentence."). Here, however, the asserted ambiguity is created by nothing more than a simple conflict: one condition imposes sex offender therapy subject to the initial evaluation qualification; one condition flatly imposes sex offender therapy. Only the first of these two conditions was pronounced at oral sentencing, and only it may remain. The judgment must be reformed to conform to the oral pronouncement, and Standard Condition 14 must be excised. *See Martinez*, 250 F.3d at 942.

## III.   CONCLUSION

For the foregoing reasons, we REMAND for resentencing. The treatment condition stands, but all other challenged conditions are VACATED. The district court may reconsider imposing the sexually stimulating materials condition in light of this opinion.