# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10886

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Michael Arredondo,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CR-93-1

———————————————————————

Before Southwick, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Christopher Michael Arredondo was found guilty of possession of a firearm by a convicted felon. He was sentenced to 63 months in prison and three years of supervised release. On appeal, he argues the district court erred in determining his offense level and imposing certain supervised release conditions. He also contends the statute of conviction, 18 U.S.C.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10886

§ 922(g)(1), exceeds Congress's Commerce Clause authority and violates the Second Amendment. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Christopher Michael Arredondo pled guilty without a plea agreement to possession of a firearm after a felony conviction. In the presentence report, the probation officer calculated a total offense level of 20, including an enhanced base offense level under U.S.S.G. § 2K2.1(a)(4)(A) because Arredondo had previously been convicted of Texas aggravated robbery, which the probation officer found was a crime of violence. After a three-point reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, his total offense level was 17. Based on this and Arredondo's Category IV criminal history score, the PSR initially listed his Sentencing Guidelines imprisonment range as 37 to 46 months.

Nevertheless, in the addendum to the PSR, the probation officer recommended withdrawing the reduction for acceptance of responsibility because Arredondo "failed to voluntarily terminate or withdraw from criminal conduct or associations." The addendum explained that after the initial PSR was written, a detective reviewed live footage of jail tablet video visits between Arredondo and his family in July 2024. In one of the videos, the relationship between Arredondo and his fifteen-year-old daughter (the victim) "appeared to be sexual as she exposed her vagina and breast to" him. Because of the video, the Texas Department of Family and Protective Services scheduled an interview with Arredondo's wife, Kristy. During jail phone calls in early August 2024, a detective listened to Arredondo ask the victim to tell her sister and Kristy about the incident and "about the sexual activity going on between them." In a phone conversation involving Arredondo, Kristy, and the victim, Kristy was "distraught about the news"

2

and Arredondo made "comments about hanging himself in his jail cell for what he had done to the family."

At a subsequent interview with detectives, Arredondo admitted that on three occasions in January 2024, there were "incidents" involving him and the same daughter. Although he did not provide many details, Arredondo "stated the victim pulled his penis out of his pants during one of the incidents." A detective then informed Arredondo that "he would be charged for Possession of Child Pornography for the videos he received from the victim." The probation officer explained that, as of the date of the PSR addendum, local authorities "plan[ned] to pursue charges" and were still investigating. Based on the removal of the acceptance-of-responsibility reduction, Arredondo's new Guidelines imprisonment range was 51 to 63 months.

At sentencing in September 2024, the district court overruled the defense's objection to the denial of acceptance-of-responsibility points and adopted the 51-to-63-month Guidelines range from the PSR addendum. It sentenced Arredondo to 63 months, to be followed by three years of supervised release.

The district court imposed standard and mandatory supervised release conditions. It then stated that the special conditions of supervised release had been set out in a separate order, but that the order had not been signed and returned. Defense counsel objected to conditions "number 7 [and] down," which were "related to the conduct alleged in the addendum."[1] The district court immediately overruled the objection and

---

[1] In the judgment, the restriction on pornography is the seventh listed condition; the eighth, ninth, and tenth conditions relate to internet use, sex offender treatment, and contact with minors, respectively.

read a list of special conditions, which included a ban on possessing pornography and a limitation on computer use and contact with minors. Defense counsel then clarified the objection to the special conditions. Again, the district court overruled the objection.

Consistent with the oral pronouncement, the judgment included special conditions of supervised release requiring that Arredondo

> neither possess nor have under his control any pornographic matter or any matter that sexually depicts minors under the age of 18 including, but not limited to, matter obtained through access to any computer and any matter linked to computer access or use; [and]

> not possess, have access to, or utilize a computer or internet connection device, including, but not limited to Xbox, PlayStation, Nintendo, or similar device, without permission of the probation officer. This condition requires preapproval for categories of computer or internet access or use. It does not require separate pre-use approval every time the defendant accesses or uses a computer or the internet[.]

Arredondo timely appealed.

## DISCUSSION

### I.  *Guidelines Calculations*

We begin with Arredondo's arguments that the district court erred in its Guidelines calculations.[2]  First, Arredondo contends the district court wrongly enhanced his base offense level under U.S.S.G. § 2K2.1(a)(4)(A) because it erroneously concluded that Arredondo had been convicted of a

---

[2] As Arredondo concedes, and the Government agrees, plain-error review applies to the first issue.  Arredondo failed to preserve it because he did not object in the district court to the characterization of his Texas aggravated robbery conviction as a "crime of violence."  In any case, Arredondo's argument is foreclosed, as we explain.

"crime of violence" based on his Texas aggravated robbery conviction. Arredondo asserts that U.S.S.G. § 4B1.2(a), which defines "crime of violence" for purposes of the enhancement, "requires a causal nexus between the taking and force elements of the offense," which Texas robbery lacks.

A recent decision of this court forecloses that argument. *See United States v. Wickware*, 143 F.4th 670, 675 (5th Cir. 2025). There, too, the defendant asserted that the Guidelines require "a 'causal connection' between the defendant's assaultive conduct and the unlawful taking." *Id.* at 674. We rejected that reasoning and held that Texas robbery constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(2). *Id.* at 675. The district court therefore did not err in enhancing Arredondo's base offense level.

Second, Arredondo argues the district court wrongly denied him a reduction for acceptance of responsibility. Arredondo preserved this issue for appeal by objecting in the district court. "A district court's refusal to reduce a sentence for acceptance of responsibility is reviewed under a standard 'even more deferential than a pure clearly erroneous standard.'" *United States v. Najera*, 915 F.3d 997, 1002 (5th Cir. 2019) (citation omitted). "Such a decision will not be reversed unless it is 'without foundation.'" *Id.* (citation omitted).

The Guidelines provide for a two-level decrease to the offense level of a defendant who "clearly demonstrates acceptance of responsibility." U.S.S.G § 3E1.1(a). Pleading guilty before trial "combined with truthfully admitting the conduct comprising the offense" constitutes "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. Such evidence, though, "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*

No. 24-10886

The Guidelines include a non-exhaustive list of several considerations for a sentencing court to consider when determining whether a defendant has clearly demonstrated acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.1. One is "voluntary termination or withdrawal from criminal conduct or associations." *Id.* A court may therefore deny a reduction for acceptance of responsibility when a defendant continues criminal conduct. *United States v. Puckett*, 505 F.3d 377, 387 (5th Cir. 2007). This is true even where that conduct was not directly related to the offense with which the defendant was charged. *See United States v. Hinojosa-Almance*, 977 F.3d 407, 411 (5th Cir. 2022).

Here, the district court concluded based on the evidence in the record that Arredondo's sexually explicit video call with his minor child constituted illegal conduct demonstrating a failure to cease criminal behavior, outweighing his guilty plea and admission to illegally possessing a firearm. Arredondo argues that because the record is silent about whether he elicited or responded positively to the sexual displays, his involvement in the video call does not negate other evidence of his acceptance of responsibility. This is unpersuasive. The district court had a foundation for the inference that Arredondo elicited or responded positively to the displays, especially given Arredondo's admission to recent physical sexual contact with his daughter.

## II.  *Supervised Release Conditions*

Arredondo contends the district court erred by imposing supervised release conditions restricting access to pornography and requiring computer-and-internet-use monitoring. We review for abuse of discretion because Arredondo preserved his challenges to the supervised release conditions by objecting in the district court. *See United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United*

*States v. Castillo*, 430 F.3d 230, 238–39 (5th Cir. 2005) (quotation and citation omitted).

"A district court has wide, but not unfettered, discretion in imposing terms and conditions of supervised release." *United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015). Under 18 U.S.C. § 3583(d), conditions must meet three requirements. First, a condition must be "reasonably related" to at least one statutory factor, including:

> (1) the nature and characteristics of the offense and the history and characteristics of the defendant, (2) the deterrence of criminal conduct, (3) the protection of the public from further crimes of the defendant, and (4) the provision of needed educational or vocational training, medical care, or other correctional treatment to the defendant.

*United States v. Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009) (citing 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), (2)(B)–(D)). When applying these factors, a court may consider the defendant's conduct regardless of whether it is related to the offense for which the defendant is being sentenced. *See id.* at 153–54 (collecting authorities). With respect to the first factor, there must be "*some* connection" between the defendant's offense, history, or characteristics and the condition imposed, but a "perfect fit" is not required. *United States v. Fields*, 777 F.3d 799, 803 (5th Cir. 2015).

Second, the condition must be "narrowly tailored" so that it does not involve a "greater deprivation of liberty than is reasonably necessary" to advance the goals of these statutory factors. *Duke*, 788 F.3d at 398 (quotation and citation omitted). Where, as here, a district court does not explain the reasons for imposing a condition, the condition should still stand "if the justification can be inferred from the record." *United States v. Iverson*, 874 F.3d 855, 861 (5th Cir. 2017).

Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3).[3]

### A. Access to Pornography

Arredondo argues the district court erred by prohibiting him from possessing "any pornographic matter or any matter that sexually depicts minors under the age of 18," because that condition is neither reasonably related to any of the statutory factors nor narrowly tailored to Arredondo. He contends there is no nexus between pornography and his history of criminal sexual encounters with his daughter, comparing his circumstances to two cases decided by this court. *See United States v. Salazar*, 743 F.3d 445 (5th Cir. 2014); *United States v. Huor*, 852 F.3d 392 (5th Cir. 2017).

In *Salazar*, this court held the district court abused its discretion by imposing a special condition prohibiting the defendant's access to pornography because the condition was not reasonably related to his conviction for failure to register as a sex offender. 743 F.3d at 450–53. The *Salazar* court reasoned that nothing in the defendant's criminal history suggested that his past crimes were "fueled" by sexually stimulating material, there was no indication that the defendant had ever used pornography, there was "no evidence of predatory sexual behavior beyond his singular and now-remote sexual offense," and there was no indication of likely recidivism. *Id.* at 452.

Here, by contrast, Arredondo's criminal sexual conduct was connected to sexually stimulating material that closely resembles, and might constitute, child pornography; there is evidence of several recent incidents of predatory sexual behavior; there also is reason to suspect Arredondo may

---

[3] Arredondo does not challenge the conditions on this ground.

be prone to committing future sex crimes.  These facts provided a foundation for the district court to conclude that prohibiting Arredondo's access to pornography was reasonably related to his history of engaging in sexual encounters with his daughter (including by receiving sexually stimulating material from her) and reasonably necessary for the deterrence of, and protection of the public against, further sexual criminal conduct by Arredondo.

Similarly distinguishable is *Huor*, where this court also concluded the district court abused its discretion by imposing a condition prohibiting the possession of sexually stimulating materials.  852 F.3d at 396.  There, as in *Salazar*, the offense of conviction was failure to register as a sex offender, and we similarly emphasized that the defendant's sole sexual offense was remote and that there was no evidence pornography use contributed to his original offense. *See id.* at 400.

Arredondo also supports his assertion that there is no connection between pornography and his involvement in the video visit by arguing there is no evidence that he intended to record any sexual interaction or that he solicited or responded positively to the displays.  It is a federal crime, however, to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct "for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct."  18 U.S.C. § 2251(a).  Another panel of this court has held in an unpublished opinion that Congress intended this statute to "broadly criminalize the dissemination of *any* visual image of child pornography." *United States v. Nichols*, 371 F. App'x 546, 548 (5th Cir. 2010).  We agree with that analysis.  Additionally, another circuit has held that a FaceTime call can constitute a "visual depiction" for purposes of applying a Guidelines enhancement for producing a visual depiction of a minor engaging in sexual acts. *United States v. Gould*, 30 F.4th 538, 543–44 (6th Cir. 2022).  In sum,

the district court reasonably could have inferred that Arredondo's video call with his daughter resembled child pornography such that there was "*some* connection" between pornography and his criminal conduct. *Fields*, 777 F.3d at 803.

Given the evidence that Arredondo engaged in criminal conduct that was "sexual in nature[,] it was reasonable for the district court to restrict [his] access to sexually stimulating material more broadly in an effort to prevent future crimes or aid in his rehabilitation." *Ellis*, 720 F.3d at 227 (citation omitted). In promoting deterrence and rehabilitation in this manner, the condition does not impose "a greater deprivation of liberty than reasonably necessary to accomplish statutory sentencing goals." *Duke*, 788 F.3d at 399.

### B. *Computer and Internet Access*

Arredondo also challenges the condition limiting his computer and internet access to categories pre-approved by the probation office. He cites two opinions where this court vacated internet access restrictions. *See United States v. Tang*, 718 F.3d 476, 488 (5th Cir. 2013); *United States v. Fernandez*, 776 F.3d 344, 348–49 (5th Cir. 2015). *Tang* held the district court abused its discretion by imposing a blanket ban on internet use without the probation office's approval, because Tang "never used computers for illicit purposes." 718 F.3d at 484. Similarly, *Fernandez* held the district court abused its discretion when it required that Fernandez install a filtering software on his computer to block access to sexually oriented websites. 776 F.3d at 348. We based our decision on the fact that Fernandez had "a single, prior sex-related conviction" and that neither his "offense, nor his related criminal history, involved computer or Internet use." *Id.* at 346. Arredondo's reliance on these cases is mistaken, however, because his criminal behavior — specifically, his sexually explicit video call with his daughter — involved internet use. *See Ellis*, 720 F.3d at 225 (noting that "restrictions on Internet

and computer use are often imposed in cases involving child pornography, and this circuit has routinely upheld such restrictions"). The condition limiting Arredondo's computer and internet access is thus reasonably related to his history of criminal sexual conduct. The district court therefore had a foundation for imposing this condition.

Additionally, Arredondo refers to the district court's forbidding him from contacting minors online, arguing that this more tailored condition demonstrates that the broader internet use preauthorization condition he challenges is too broad. A condition, however, need not be as narrowly tailored as possible to pass muster under 18 U.S.C. § 3583(d). Rather, the law merely requires that the condition not constitute "a greater deprivation of liberty than *reasonably necessary* to accomplish statutory sentencing goals." *Duke*, 788 F.3d at 399 (emphasis added). As we have described, Arredondo's history provided ample grounds on which the district court could have found that the preauthorization condition was reasonably necessary for the deterrence of, and protection of the public against, further sexual criminal conduct by Arredondo.

## III.    *Remaining Challenges*

Arredondo's other arguments are, as he concedes, foreclosed by our precedent. Arredondo's contention that Congress exceeded its authority to regulate commerce when it enacted 18 U.S.C. § 922(g) is foreclosed by *United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1081 (2024). His argument that Section 922(g)(1) is facially unconstitutional under the Second Amendment is foreclosed by *United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024).

AFFIRMED.