In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2328

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO REEVES, also known as RIO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cr-00614-2—**Joan B. Gottschall,** *Judge.*

ARGUED APRIL 3, 2012—DECIDED AUGUST 20, 2012

Before BAUER, POSNER and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* A federal jury convicted the defendant-appellant, Mario Reeves, of several crimes, including conspiracy and distribution of heroin. On May 20, 2011, the district court sentenced Reeves to 25 years in prison to run concurrently with a separate, lesser sentence of 8 years. At the sentencing hearing, the district court applied a statutory enhancement to Reeves' sentence due to a prior state conviction. *See* 21 U.S.C. § 851. Reeves objected to that enhancement and appeals his sentence. Finding no error, we affirm.

## I. BACKGROUND

In 2007, Mario Reeves was arrested for his role in a heroine distribution ring known as the Poison Line. He was indicted for several crimes committed under 21 U.S.C. §§ 841, 846, and 843, and he pleaded not guilty. The case went to trial, and a jury convicted him on all counts.

Prior to trial, the government informed the court and Reeves that it would seek an enhancement pursuant to 21 U.S.C. § 851 of any sentence resulting from a guilty verdict; Section 851 requires the government to give notice of a request for a sentencing enhancement for certain predicate criminal offenses. Reeves had a prior drug offense. In 2004, he had pleaded guilty in Illinois state court to possession and sale of cocaine. This crime qualifies as a predicate offense under the statute and triggered the sentencing enhancement at issue in this case.

Reeves objected to the government's pursuit of the enhancement. He claimed that the attorney representing him during his 2004 guilty plea in state court did not inform him that a guilty plea could be used against him later to trigger a statutory sentencing enhancement in federal court. As a result, he argued, the attorney had provided ineffective assistance of counsel in the state court proceedings, running afoul of the Sixth and Fourteenth Amendments to the Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984). Thus, he claimed, the state conviction is constitutionally infirm and cannot be used against him now for an enhancement of his federal sentence.

The district court applied the § 851 enhancement over Reeves' objections, and he renews his argument on appeal.

## II. DISCUSSION

We begin by noting that this is a permissible although unusual method to launch a collateral attack on a prior conviction. Reeves is correct that if a prior state conviction was established in violation of the Sixth Amendment, that conviction cannot be counted to enhance a later sentence. *See United States v. Feliciano*, 498 F.3d 661, 664 (7th Cir. 2007); *see also* 21 U.S.C. § 851(c)(2). We will therefore review Reeves' state court conviction from 2004 for the limited purpose of determining whether it was permissible for the district court to count it toward a § 851 sentence enhancement.

We review the facts underlying a sentencing challenge for clear error and review any surrounding question of law de novo. *See United States v. Patterson*, 576 F.3d 431, 442-43 (2009). Here, we are presented with a pure legal question: whether federal law requires an attorney to advise his client that a guilty plea may expose the client to potential sentencing enhancements for any future convictions.

The Supreme Court has held that the Sixth Amendment guarantees criminal defendants not just the right to counsel, but the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. To prove that counsel was ineffective in the context of a guilty plea, a defendant

must show "(1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Reeves argues that it was objectively unreasonable under *Strickland* for his attorney in the state court proceedings to fail to advise him about the later effect of a guilty plea on the potential sentence for any future crimes. He believes that a recent Supreme Court decision, *Padilla v. Kentucky*, mandates this conclusion. 130 S. Ct. 1473 (2010). We disagree.

The *Padilla* case involved an immigrant, Jose Padilla, who pleaded guilty in state court to drug-related offenses. *Id*. at 1477-78. His attorney failed to advise him that as a result of that guilty plea, he would likely be deported from the United States. *Id*. at 1478. Faced with deportation, Padilla challenged his state conviction, alleging ineffective assistance of counsel. *Id*. The Supreme Court held that Padilla satisfied the first prong of *Strickland*—his attorney's performance was objectively unreasonable—and it held for the first time that "counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 1482-83, 1486.

The Court also declined to categorize deportation as a "direct" or "collateral" consequence of a guilty plea, *id*. at 1481, although many lower courts have used this

method of categorization to determine whether an attorney has a Sixth Amendment duty to inform his client of a relevant consequence. *See, e.g., Chaidez v. United States*, 655 F.3d 684, 690-92 (7th Cir. 2011) (explaining the distinction and listing some circuits that have employed it); *Bustos v. White*, 521 F.3d 321, 325-26 (4th Cir. 2008) (categorizing parole eligibility as a collateral consequence of a plea). The idea is that counsel has a constitutional duty to inform his client of direct consequences of his guilty plea; but if a consequence is merely collateral to a plea of guilty—in other words, if it is an incidental or loosely related result of the plea—counsel has no duty to mention it. *See Chaidez*, 655 F.3d at 691-92. Although the Supreme Court declined to apply this distinction to deportation in *Padilla*, it was also careful to note that it would not answer whether the distinction was an appropriate one for other ineffective assistance of counsel claims. 130 S. Ct. at 1481 ("Whether the distinction is appropriate is a question we need not consider in this case *because of the unique nature of deportation*.") (emphasis added).

Indeed, *Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only. The Court repeatedly underscored the severity of deportation before deciding that an attorney must always inform his client of that unique risk. *Id*. at 1480-81, 1486. While recognizing the importance of the Sixth Amendment right to counsel generally, the court also stressed "the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living

lawfully in this country" as a rationale for the rule. *Id*. at 1486.

In this case, we deal not with deportation, but with the possibility of an enhanced sentence for future criminal conduct. This court already ruled on this exact issue in *Lewis v. United States*, although in *Lewis*, we relied partially on a prior case involving deportation that is now overruled by *Padilla*. *See Lewis*, 902 F.2d 576, 577 (7th Cir. 1990) (citing *Santos v. Kolb*, 880 F.2d 941 (7th Cir. 1989), *overruled by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010)). Nevertheless, because of the limited scope of *Padilla* (discussed above), our conclusion about future punishment in *Lewis* remains sound. As we noted, "deportation is a consequence of *this* [the instant] conviction; enhancement depends on the defendant's deciding to commit future crimes." 902 F.2d at 577 (emphasis in original). Put simply, there is no automatic consequence to the guilty plea in this case. Any risk present at the time Reeves pleaded guilty in state court in 2004 was entirely contingent on his deciding to commit more crime in the future.

We pause for a moment to consider the absurd ramifications of the rule that Reeves asks us to create. Using *Padilla* as a springboard, we would be forced to hold that counsel has a constitutional duty to advise the client as to how he might best continue his criminal activity while minimizing his risk of future punishment. This would not only represent unattractive public policy, it finds no support in precedent. The Supreme Court created a rule in *Padilla* specific to the risk of deportation,

and we see no justification for extending that to the realm of future criminal sentence enhancements.

We thus find that it was not unreasonable under *Strickland* for Reeves' attorney in the 2004 proceedings to fail to advise his client that a guilty plea could result in a later sentencing enhancement for a future crime. Because the 2004 guilty plea was constitutionally sound, there was nothing improper about the enhancement that the district court applied under 21 U.S.C. § 851.

### III. CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's sentence.