# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60146

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

WILLIAM BRUCE CRAIN,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant William Bruce Crain pleaded guilty to possession of child pornography and to using interstate facilities to transmit information about minors. Crain's plea agreement included a waiver of his appeal and collateral-attack rights. He filed a motion to vacate his sentence, which the district court denied after a hearing. He now appeals, arguing that (1) his collateral-attack waiver is invalid, and (2) his attorney was ineffective for failing (a) to object to misstatements by the district court at his Rule 11 plea colloquy, and (b) to advise him about possible special conditions of supervised release. We dismiss Crain's appeal in part, and affirm the district court in part.

No. 15-60146

## I. FACTS AND PROCEEDINGS

In 2008, Crain was charged with possession of child pornography (Count I) and using interstate facilities to transmit information about minors (Count II), in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2425. In 2009, Crain pleaded guilty to those charges pursuant to a written plea agreement. That agreement contained waivers of his rights (1) to appeal his conviction and sentence "on any ground whatsoever," and (2) to collaterally attack his conviction and sentence "in any post-conviction proceeding[.]"[1]

The plea agreement contained a section describing the maximum potential sentence. It stated, as to Count I, that Crain would receive a term of supervised release of at least three years and up to his lifetime. That statement of the maximum term of supervised release was correct, but the minimum term of supervised release for his offense was actually five years.[2] The plea agreement also specified that if Crain should violate any condition of his supervised release, he could "be returned to prison for the entire term of supervised release[.]"

At Crain's plea hearing, the district judge mistakenly informed Crain that the *maximum* term of supervised release on Count I was three years. The judge also told Crain that if a defendant violates the conditions of supervised release, the district court would "decide what to do with the person [who violated terms of supervised release]" and that the court "could even send the person back to the penitentiary[.]" When Crain entered his guilty plea, he had already signed his plea agreement. He confirmed at his plea colloquy that he

---

[1] A defendant may waive his right to a proceeding under 28 U.S.C. § 2255, just as he may waive his appeal rights. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (per curiam).

[2] 18 U.S.C. § 3583(k) (2006).

had read "each and every paragraph" of the plea agreement before he signed it.

After Crain pleaded guilty, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") which stated the correct maximum and minimum term of supervised release, and recommended the maximum, that is, a lifetime of supervised release. The PSR also recommended special conditions of supervised release because Crain was a sex offender: (1) a prohibition of any Internet access at all and any computer use without permission from the Probation Office, (2) sex offender treatment, (3) polygraph examinations as directed by the Probation Office, (4) sex offender registration, and (5) warrantless searches by the Probation Office. Crain filed objections to the PSR before sentencing, but he did not address the inconsistent maximum and minimum terms of supervised release.

At the sentencing hearing, Crain stated that he had read the PSR and discussed it with his lawyers.[3] The probation officer again correctly stated the maximum and minimum terms of supervised release, and Crain's attorney agreed with that range. Crain addressed the court before the sentence was imposed, but he did not mention either the length of the supervised release term or the special conditions of supervised release identified in the PSR. The district court adopted the PSR's guideline range from 151 to 180 months, and sentenced Crain to 161 months in custody. The court also imposed a lifetime term of supervised release, including the following special conditions: (1) a lifetime ban on possession or use of any computer with Internet access and on using any computer at all during business hours, (2) providing financial information on the Probation Office's request, (3) sex offender and mental

---

[3] Though Crain was represented by one attorney at the plea stage, that attorney was joined by a second attorney at sentencing.

No. 15-60146

health treatment, (4) polygraph examinations at the direction of the Probation Office, (5) sex offender registration, and (6) warrantless searches.

Crain filed a notice of appeal of his sentence. The government filed a motion to dismiss Crain's appeal based on his appeal waiver. Crain responded that his depression medication and mental health issues had rendered him incompetent to plead guilty. In 2010, a panel of this court rejected that contention, concluding that the district court had adequately addressed Crain's competence at rearraignment, and dismissing Crain's appeal on the basis of his appeal waiver.

In 2011, Crain filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. He raised six grounds in his motion to vacate: (1) The district court violated Federal Rule of Criminal Procedure 11 at the plea hearing, most notably by incorrectly stating the maximum term of supervised release and "[f]ail[ing] to inform [Crain] of the maximum possible imprisonment,"[4] (2) his plea counsel was ineffective for incorrectly advising him about the guideline range Crain would face, and for failing to advise him of the likely lifetime term and special conditions of supervised release,[5] (3) his sentencing counsel was also ineffective for (a) failing to object to the PSR and, at sentencing, on the grounds that the lifetime term of supervised release conflicted with the district judge's statement, and (b) failing to request to withdraw his guilty plea, (4) his appellate counsel was ineffective (a) for failing to raise several issues, and (b) for failing to challenge his appeal waiver, and (5) the government "lacked

---

[4] Crain raises additional alleged Rule 11 errors in his § 2255 motion, but his brief on appeal addresses only these two. The court therefore need not address the other alleged Rule 11 errors. *See Yohey v. Collins*, 985 F.2d 222, 225–26 (5th Cir. 1993) (declining to consider an "issue [that] was raised in [the petitioner's] petition, but was not presented or argued in his initial appeal brief").

[5] Crain also complained that counsel did not inform him of the consequences of violating the terms of supervised release, but that issue was not included in the certificate of appealability.

jurisdiction" to charge him with Count I because it did not establish an interstate commerce nexus. Crain attached to his motion his own affidavit and an affidavit from his attorney at the plea phase.

The government contended that Crain's motion should be denied based on his collateral-attack waiver, which Crain claimed was rendered invalid by the Rule 11 errors at his plea hearing. The district court ruled that the collateral-attack waiver was valid and barred all of Crain's claims other than his claims of ineffective assistance of counsel at the plea and sentencing stages.[6] This was because those claims fall under an exception to an otherwise valid collateral-attack waiver when such claims could affect the validity of the plea.[7] The court denied some ineffective assistance claims[8] and held a hearing on the claims regarding his attorney's alleged failure to (1) advise him of the special conditions, (2) inform him of the consequences of violating the conditions of supervised release, and (3) object to the portion of the PSR that contradicted the district judge's statement at rearraignment.[9]

At that hearing, Crain's plea attorney testified that the government had considered bringing additional charges against Crain, but did not do so because of the plea negotiations. The attorney acknowledged that, before rearraignment, he had advised Crain that the court could impose up to a lifetime term of supervised release and that the conditions of release were generally discussed. That lawyer also testified that he knew that Crain might

---

[6] The ineffective assistance of appellate counsel claims failed because Crain "was never entitled to that appeal to begin with."

[7] *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

[8] Specifically, the district court denied Crain's claims that his attorney (1) failed to object to the guidelines calculation, and (2) failed to advise him of the correct guideline range and maximum term of supervised release, because Crain was aware of the statutory maximum term of imprisonment and supervised release via the plea agreement.

[9] The court appointed counsel to represent Crain for the evidentiary hearing.

face some Internet restrictions, but it is unclear whether he discussed this with Crain.[10]

For his part, Crain testified that, before he entered his plea, his attorney never advised him that he could face a lifetime computer ban. Crain also claimed that he pleaded guilty based on the court's assurance at rearraignment that he would face no more than three years of supervised release on each count and that he first learned of the possibility of lifetime supervised release and computer restrictions when the court imposed sentence. But, he also admitted that when he received the PSR, his "main focus" was on the amount of time he would be imprisoned. He maintained that he was never told that he could return to prison for life for supervised release violations.

Crain also testified that if he had known he faced a lifetime computer ban or a lifetime term of supervised release, he would not have pled guilty, because these conditions would make it impossible for him to work after his release. He also claimed that, after reviewing the PSR, he asked his attorneys to withdraw his plea because the guideline range was longer than he expected, but that they told him it was too late to do so.[11] He acknowledged, however, that he did not raise these concerns during allocution.

After the hearing, the court denied Crain's motion as to his remaining claims. The court concluded that counsel could not have known, before Crain pleaded guilty, what recommendations would be in the PSR. The court found that Crain's attorney advised him that he could be returned to prison if he

---

[10] Crain's attorney testified "I believe that there was discussion about restriction of Internet use. I believe I had that discussion with the A.U.S.A. on that. I don't think that I would have told him it was a lifetime ban."

[11] This statement appears to conflict with Crain's affidavit, in which he stated that it was the recommended term of supervised release and the special conditions of supervised release that made him want to withdraw his plea.

violated conditions of supervised release.[12] As for the failure-to-object claim, the court ruled that any such objection would have been frivolous because a life term was authorized by the statute and the court would not have allowed Crain to withdraw his plea. The court also noted that Crain's testimony that he was "focused" on the length of his sentence belied his claim that he would not have pled guilty.

The district court granted a certificate of appealability ("COA") on the following issues: (1) whether the alleged Rule 11 errors rendered Crain's plea and collateral-attack waiver invalid; (2) whether counsel was ineffective for failing to advise Crain of the conditions of supervised release, (3) whether counsel was ineffective for failing to object to the court's understatement of the length of the supervised release term, and (4) "[w]hether the prosecution had subject-matter jurisdiction over [Crain's] case."[13] After Crain filed his opening brief, the government filed a motion to dismiss or for summary affirmance, and a panel of this court ordered briefing only on whether counsel was ineffective for failing to advise Crain of the possible special conditions of supervised release before he entered his plea.

## II. ANALYSIS

### A.    Validity of Collateral-Attack Waiver

#### 1.    *Alleged Rule 11 Errors*

The government's motion to dismiss Crain's appeal dovetails with the first issue Crain raises, *viz.*, whether the court's alleged Rule 11 errors invalidated Crain's guilty plea and his collateral-attack waiver. A reviewing

---

[12] Even if this were not the case, the court further noted that these claims would not render the plea invalid because special conditions and potential revocation of supervised release are collateral, not direct, consequences of a guilty plea.

[13] The district court did not address the merits of the fourth claim, and the certificate of appealability did not cover all of Crain's ineffective assistance of counsel claims.

court examines a defendant's challenge to a collateral-attack waiver de novo,[14] but "[t]he district court's factual finding that [a defendant] was fully advised of the consequences of pleading guilty is reviewed for clear error."[15] As Crain acknowledges, however, the district court's decision to uphold the waiver in light of the alleged Rule 11 error is reviewed for plain error.[16] "To establish plain error, [a defendant] is required to show that (1) there was error, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings."[17] "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea."[18]

Crain alleged five Rule 11 errors in his motion, but addresses only two on appeal: the district court's purported failure to advise him of (1) the maximum term of supervised release and (2) the maximum sentence if he violated a condition of supervised release. But, when Crain pleaded guilty, he had already signed his plea agreement, and he testified that he had read every provision of the agreement before he signed it. The plea agreement explicitly

---

[14] *United States v. Jacobs*, 635 F.3d 778, 780–81 (5th Cir. 2011) (per curiam).

[15] *United States v. Scott*, 987 F.2d 261, 264 (5th Cir. 1993).

[16] *See United States v. Vonn*, 535 U.S. 55, 58–59 (2002) (holding that when a defendant "lets Rule 11 error pass without objection in the trial court[,]" he "has the burden to satisfy the plain-error rule"); *see also United States v. Narvaez*, 452 F. App'x 488, 490–91 (5th Cir. 2011) (per curiam) (explaining that a challenge to an appeal waiver's validity that has a basis in a Rule 11 error "is in substance an attack on the court's conduct of the Rule 11 plea colloquy" that is reviewed for plain error when there is no contemporaneous objection (citation omitted)); *United States v. Oliver*, 630 F.3d 397, 411 (5th Cir. 2011) ("Because Oliver did not specifically object to the district court's plea colloquy . . . this court reviews [the defendant's challenge to his appeal waiver] for plain error." (citation omitted)).

[17] *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (internal quotation marks and citation omitted).

[18] *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

states that the maximum term of his supervised release was life[19] and that he could be returned to prison for the entire supervised release term—namely, his lifetime—for violating its conditions. There is nothing to indicate that if Crain had received this same information from a different source—specifically, the district court—he would have made a different decision.

As for the second alleged error, Crain also complains that he was not advised that the "minimum" penalty for violating a condition of supervised release is five years.[20] This failure may not be a Rule 11 error at all: Rule 11 requires the district court to advise defendants of "any maximum possible penalty, including imprisonment, fine, and term of supervised release,"[21] and it is not clear that this encompasses the maximum prison term for particular kinds of violations.[22] But even if it were error, Crain was aware from the plea agreement that he could be returned to prison for life if he violated supervised release conditions. The district court specifically told him that the court would "decide what to do" with someone who violated those conditions and that the court could send him back to prison for a violation.

Crain's post hoc claim that he would not have pled guilty without these Rule 11 violations is contradicted by his statement at rearraignment that he had thoroughly read and understood the plea agreement. "Solemn declarations in open court carry a strong presumption of verity[,]" and "constitute a

---

[19] The plea agreement incorrectly stated the *minimum* term of supervised release as three years, while the correct minimum is five years. 18 U.S.C. § 3583(k) (2006). Crain does not appear to contend that this error in the plea agreement itself entitles him to withdraw his guilty plea.

[20] Such a penalty arises only for certain kinds of supervised release violations, namely, commission of certain criminal offenses. 18 U.S.C. § 3583(k) (2006).

[21] FED. R. CRIM. P. 11(b)(1)(H).

[22] *But see United States v. Tuangmaneeratmun*, 925 F.2d 797, 803 (5th Cir. 1991) ("[T]he defendant should be informed that . . . a violation of the conditions of supervised release can subject the defendant to imprisonment for the entire term of supervised release[.]").

formidable barrier in any subsequent collateral proceedings."[23] Crain's testimony at the evidentiary hearing belies his own argument. He admitted that when he received the PSR, his "main focus" was on the amount of time he would be imprisoned, not the term or conditions of supervised release. This further suggests that neither the possible term of supervised release nor the minimum sentence for specific violations of its conditions were significant factors in Crain's decision to plead guilty. Even though Crain now states that he was "confus[ed]" when the district court's statement conflicted with the plea agreement, he did not avail himself of the opportunity to clarify any confusion, either at the plea hearing or at allocution.

The cases that Crain cites in support are inapposite. He relies on four cases in which this court or other Courts of Appeals held that a plea was involuntary because the district court failed to state the correct maximum term of supervised release or imprisonment.[24] But in each of those cases, there was no indication that the defendant was given the correct information in the plea agreement.[25] Crain may well have hoped for a less onerous sentence, but he was expressly warned that it could be higher. "[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed[.]"[26] Crain has not shown "a reasonable probability that, but for the error, he would

---

[23] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[24] *United States v. Wallace*, 551 F. App'x 193, 195 (5th Cir. 2014) (per curiam); *United States v. Rivera-Maldonado*, 560 F.3d 16, 17–22 (1st Cir. 2009); *Scott*, 987 F.2d at 263–66; *see also United States v. Bounds*, 943 F.2d 541, 542–43, 545–46 (5th Cir. 1991).

[25] *Wallace*, 551 F. App'x at 195; *Rivera-Maldonado*, 560 F.3d at 17–22; *Scott*, 987 F.2d at 263–66; *Bounds*, 943 F.2d at 542–43. In *Rivera-Maldonado*, both the plea agreement and the district court's statements were incorrect. *Rivera-Maldonado*, 560 F.3d at 17–18.

[26] *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994).

not have entered the plea."[27] We are satisfied that the Rule 11 errors Crain alleges do not invalidate his guilty plea or his collateral-attack waiver.

### 2.    *Jurisdictional Element of Plea*

The fourth issue on which the district court granted a COA was "[w]hether the prosecution had subject-matter jurisdiction over [Crain's] case." This amounts to a claim that the government did not have a factual basis sufficient to support the plea based on the jurisdictional element. If that were true, the conviction would have to be vacated;[28] but such a conclusion would not void the government's jurisdiction to *prosecute* the offense. The district court determined that this claim was barred by Crain's collateral-attack waiver and did not address its substance. It merely issued a certificate of appealability on the issue.

An insufficient factual basis for a plea, however, can also invalidate a collateral-attack waiver: "Even valid waivers do not bar a claim that the factual basis is insufficient to support the plea[.]"[29] We therefore construe this issue as another attack on the waiver and proceed to consider it, even though the district court did not. Whether Crain's waiver is valid is an issue of law that we would review de novo.[30]

To determine whether a defendant's factual basis is sufficient to support his guilty plea, the district court must examine each "element[] of the offense charged[.]"[31] The jurisdictional element of Crain's offense required that the images in question be "mailed, or . . . transported in interstate or foreign commerce, or [have been] produced using materials which have been mailed or

---

[27] *Dominguez Benitez*, 542 U.S. at 83.

[28] *See United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008).

[29] *Hildenbrand*, 527 F.3d at 474.

[30] *Id.* (citing *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002)).

[31] *Id.* at 474–75 (quoting *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc)).

so shipped or transported, by any means including by computer[.]"[32] We have not explicitly addressed the question whether images transported over the Internet to a computer in a different state have been "transported in interstate commerce," but we have indicated that images may be "transported . . . in interstate or foreign commerce via the Internet[.]"[33]

Crain claims that the government "merely presumed that since the images were discovered on [Crain's] computer, the jurisdictional nexus had been met." This understates the government's proffer. The government stated that it possessed e-mails and chats between a computer in Texas, and Crain's computer in Mississippi and that these e-mails and chats "trad[ed] . . . visual images depicting children engaged in sexual[ly] explicit conduct via the Internet[.]" The images therefore traveled between Texas and Mississippi— across state lines—via the Internet. The factual basis of the jurisdictional element is therefore satisfied, so this alternate challenge to Crain's plea and collateral-attack waiver also fails. The waiver is therefore valid and bars Crain's claims based on the Rule 11 errors, the jurisdictional element of the offense, and ineffective assistance of appellate counsel. We therefore dismiss Crain's appeal of those claims.

## B.    Ineffective Assistance of Counsel

Crain's collateral-attack waiver does not, however, bar his claims of ineffective assistance of counsel, because "an ineffective assistance of counsel argument survives a waiver of appeal . . . when the claimed assistance directly

---

[32] 18 U.S.C. § 2252(a)(4)(B) (2006); *see also United States v. Lewis*, 554 F.3d 208, 213 (1st Cir. 2009) ("'Shipped or transported in interstate commerce' here must require interstate movement."). This provision was later expanded to include images "shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce[.]" 18 U.S.C. § 2252(a)(4)(B) (Supp. 2008).

[33] *United States v. Runyan*, 290 F.3d 223, 243 (5th Cir. 2002) (evaluating whether there was evidence that the defendant "had transported these images in interstate or foreign commerce via the Internet or any other means").

affected the validity of that waiver or the plea itself."[34] This court "review[s] *de novo* a district court's conclusions on a § 2255 petition based on ineffective assistance of counsel[,]" and "review[s] findings of fact for clear error."[35]

An attorney renders constitutionally ineffective assistance if his performance is deficient and that deficient performance prejudices the defendant.[36] A § 2255 movant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[37] In the context of a guilty plea, a movant shows prejudice by establishing "that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial."[38]

### 1. Failure to Object to the Court's Misstatement at Rearraignment

As detailed above, the undisputed record evidence shows that the written plea agreement correctly advised Crain that he faced a maximum supervised release term of life. Crain affirmed that he had read, reviewed with counsel, and understood this agreement, notwithstanding his conclusional argument to the contrary. As such, no prejudice resulted from counsel's failure to object to the district court's incorrect statement regarding the maximum term faced by Crain.[39] Crain thus cannot show that the district court's denial of relief on this claim was error.

---

[34] *White*, 307 F.3d at 343.

[35] *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citations omitted).

[36] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[37] *Id.* at 687–88, 694.

[38] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[39] *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) (a "bare allegation" that the defendant would have "insisted upon going to trial" was "not sufficient to establish prejudice").

No. 15-60146

## 2.    *Failure to Advise of Special Conditions of Supervised Release*

Finally, Crain claims that his attorney was ineffective for failing to advise him of the special conditions of supervised release. Although Crain's § 2255 motion nominally challenges all the special conditions of supervised release, he effectively complains of only the lifetime computer ban.[40] This court has generally held that the Sixth Amendment requires defense counsel to advise defendants only about the direct consequences of pleading guilty, not the potential collateral consequences.[41] But, in *Padilla v. Kentucky*, the Supreme Court held that defense counsel is constitutionally required to investigate and advise a client about possible deportation consequences of a plea before the client decides whether to plead guilty.[42]  The Court expressed that it did not need to consider whether the direct/collateral distinction was appropriate because of the "unique nature of deportation."[43]  The characteristics that made deportation "unique" were that it was "particularly severe[,]" "intimately related to the criminal process[,]" and "nearly an automatic result" of conviction.[44]

Crain insists that a lifetime computer ban is similarly unique, so that defense counsel is obligated to warn a client of that potential consequence. One federal court has suggested that *Padilla*'s protections could apply to other collateral consequences. The Eleventh Circuit expanded *Padilla* to the realm of civil commitment, holding that the defendant's attorney performed

---

[40] At the evidentiary hearing, Crain complained only about the computer and Internet ban. In fact, Crain testified that he knew that he would be required to register as a sex offender. Crain's only mention of the other special conditions in his appellate brief are conclusory.

[41] *See United States v. Amer*, 681 F.3d 211, 214 (5th Cir. 2012) ("[Before *Padilla v. Kentucky*,] [w]e and other courts reasoned that the Sixth Amendment did not require advice about collateral consequences[.]").

[42] *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010).

[43] *Id.* at 365.

[44] *Id.* at 365–66.

14

deficiently when he "affirmative[ly] [mis]represent[ed] that [the defendant] would not be exposing himself to further detention past his sentence" in the form of civil commitment.[45] Addressing *Padilla*, the Eleventh Circuit explained that "the Supreme Court has noted that when the law is unclear[,] a criminal defense attorney must advise his client that the 'pending criminal charges may carry a risk of adverse [collateral] consequences.'"[46] But that appeals court did not analyze the issue at length, and the deficient performance in that case involved an "affirmative misrepresentation," rather than the silence at issue here.[47]

The Seventh Circuit, by contrast, has stated that the Supreme Court's focus on the "unique" nature of deportation indicates that the Court "meant to limit its scope to the context of deportation only."[48] Two other federal circuits also declined to extend *Padilla* to other collateral consequences,[49] but neither discussed how widely *Padilla*'s holding might apply, and both compared the consequences at issue with *Padilla*'s emphasis on the severity of deportation.[50]

---

[45] *Bauder v. Dep't of Corr.*, 619 F.3d 1272, 1275 (11th Cir. 2010) (per curiam). *But see* Margaret Colgate Love, *Collateral Consequences After* Padilla v. Kentucky*: From Punishment to Regulation*, 31 ST. LOUIS U. PUB. L. REV. 87, 108 (2011) ("While civil commitment is indisputably severe, it is not 'automatic' or 'mandatory' in the same way that deportation and sex offender registration are[.]").

[46] *Bauder*, 619 F.3d at 1275 (second alteration in original) (quoting *Padilla*, 559 U.S. at 369).

[47] *Id. Padilla* refused to distinguish "affirmative misadvice" from silence. *Padilla*, 559 U.S. at 369–70.

[48] *United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012). There, the court declined to extend *Padilla* to defense counsel's "fail[ure] to advise [the defendant] about the later effect of a guilty plea on the potential sentence for any future crimes[,]" and emphasized that *Padilla* "repeatedly underscored the severity of deportation[.]" *Id.* at 639–40.

[49] *Parrino v. United States*, 655 F. App'x 399, 403 (6th Cir. 2016) ("exclusion from federal health-care programs"); *Santiago v. Laclair*, 588 F. App'x 1, 3–4 (2d Cir. 2014) (summary order) (that defendant would "automatically be sentenced to a consecutive term of discharged portion of [a sentence from an earlier conviction]").

[50] *See Parrino*, 655 F. App'x at 403; *Santiago*, 588 F. App'x at 3–4. The Eleventh Circuit has also held that a defense attorney's "failure to inform [a defendant] of the life term of supervised release was not so deficient as to deprive him of his Sixth Amendment right to counsel[,]" but did so without citing *Padilla*, on the grounds that the attorney "informed [the

No. 15-60146

It is true that a lifetime computer ban is a harsh penalty. And, after Crain filed his § 2255 motion, this court ruled that such bans are impermissible as overbroad and unreasonable.[51] It may not equate to physical "banishment or exile"[52] or amount to the loss of liberty embodied in a civil commitment,[53] but a lifetime computer ban would "completely preclude [a defendant] from meaningfully participating in modern society for the rest of his life."[54] Such bans also appear intimately related to the criminal process, perhaps even more so than deportation: Unlike deportation, computer bans may only be imposed after a conviction. An onerous lifetime computer ban, however, is not "nearly an automatic result"[55] of conviction. Even though computer bans are often ordered for sex offenders, lifetime bans are not automatic—it is far more likely that an offender will receive only a temporary ban.

We need not determine whether Crain's counsel was obligated to warn him of a possible lifetime computer ban, or—if so—whether counsel was therefore deficient in failing to do so, because Crain has not shown that he was prejudiced by this failure. The district court did not address the prejudice prong, but we address it here because it is an issue that we would review de

---

defendant] that his potential maximum sentence if convicted was life in prison[.]" *Osley v. United States*, 751 F.3d 1214, 1226 (11th Cir. 2014).

[51] *United States v. Duke*, 788 F.3d 392, 398–401 (5th Cir. 2015) (per curiam).

[52] *Padilla*, 559 U.S. at 373 (citation omitted).

[53] *See Bauder*, 619 F.3d at 1275.

[54] *Duke*, 788 F.3d at 400; *see also United States v. Sealed Juvenile*, 781 F.3d 747, 756 (5th Cir. 2015) ("[A]ccess to computers and the Internet is essential to functioning in today's society."); Emily Brant, Comment, *Sentencing "Cybersex Offenders": Individual Offenders Require Individualized Conditions When Courts Restrict Their Computer Use and Internet Access*, 58 CATH. U. L. REV. 779, 799 (2009) ("[A] strict ban on Internet access as a condition of release would prohibit the offender from: getting money from an ATM; working for any company that communicates primarily by e-mail; attending college; starting a business; and even owning a cell phone, now that most cell phones have Internet capabilities.").

[55] *Padilla*, 559 U.S. at 366.

novo.[56] The Supreme Court recently addressed the prejudice issue in *Lee v. United States*, in which it considered whether an attorney's misinformation about the consequences of a guilty plea on immigration status prejudiced the defendant, a question not addressed in *Padilla*.[57] Lee, an immigrant from South Korea, was charged with "possessing ecstasy with intent to distribute[.]"[58] During plea discussions, "Lee informed his attorney of his noncitizen status and repeatedly asked him whether he would face deportation as a result of the criminal proceedings."[59] The attorney "told Lee that he would not be deported as a result of pleading guilty."[60] This was incorrect: "[A] noncitizen convicted of such an offense is subject to mandatory deportation."[61] At a hearing on Lee's § 2255 motion, "both Lee and his plea-stage counsel testified that deportation was the determinative issue in Lee's decision whether to accept the plea."[62]

The Court noted that likelihood of success at trial was a strong indicator whether a defendant would plead guilty, but also concluded that "where [a court is] . . . asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking."[63] The Court also explained that

---

[56] *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) ("A district court's conclusions concerning a § 2255 petitioner's claims of ineffective assistance of counsel involve mixed questions of fact and law, which we review *de novo*.") (citation omitted); *cf. United States v. Flores*, 135 F.3d 1000, 1002 (5th Cir. 1998) ("[B]ecause we may affirm on any grounds that were urged below, we address as a threshold issue [an issue the district court did not examine.]").

[57] *Lee v. United States*, 137 S. Ct. 1958, 1962 (2017); *see Padilla*, 559 U.S. at 374 ("Whether Padilla is entitled to relief will depend on whether he can demonstrate prejudice . . . , a question we do not reach[.]").

[58] *Lee*, 137 S. Ct. at 1962–63.

[59] *Id.* at 1963.

[60] *Id.*

[61] *Id.* (citations omitted).

[62] *Id.* (citation and internal quotation marks omitted).

[63] *Id.* at 1966–67.

"[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pled but for his attorney's deficiencies[,]"and that they "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."[64] The Court noted that "Lee's claim that he would not have accepted a plea had he known it would lead to deportation [wa]s backed by substantial and uncontroverted evidence[,]"[65] and concluded that Lee had therefore shown a "reasonable probability that, but for [his] counsel's errors, he would not have pled guilty and would have insisted on going to trial."[66]

That is not the case here. Crain presents only self-serving post hoc assertions about how he would have pled. The contemporaneous evidence at the time he pleaded guilty, by contrast, does not weigh in his favor. The government points out that (1) Crain admitted to possessing child pornography when the search warrant was executed at his home, (2) proceeding to trial may have subjected him to additional charges and deprived him of a sentencing credit for acceptance of responsibility, (3) he did not object to the computer ban at sentencing, and (4) he testified that when he received the PSR, his primary focus was on the amount of time he would spend in custody, not the term or conditions of supervised release. Crain's "*post hoc* assertion" is not sufficient to "upset [his] plea[.]"[67] Crain thus was not prejudiced by his attorney's failure to inform him that he faced a possible lifetime computer ban as a condition of supervised release. We therefore affirm the district court's denial of Crain's motion as to his ineffective assistance claims.

---

[64] *Id.* at 1967.

[65] *Id.* at 1969.

[66] *Id.* (alteration in original) (quoting *Hill*, 474 U.S. at 59).

[67] *Id.* at 1967.

No. 15-60146

We note, as an aside, that after Crain filed his § 2255 motion, but before he filed his opening brief in this case, this court decided *United States v. Duke*, holding that absolute, lifetime bans on computer usage as a condition of supervised release were overly broad and impermissible.[68] Crain has never invoked *Duke*, and, even if he had, his valid waiver would bar such a challenge.[69] We note, however, that Crain may seek modification of conditions of supervised release in the district court.[70]

## III. CONCLUSION

We DISMISS Crain's appeal as to the alleged Rule 11 errors, the jurisdictional element of the offense, and ineffective assistance of appellate counsel. We AFFIRM the district court's denial of Crain's motion regarding his claims of ineffective assistance of counsel in the district court.

---

[68] *Duke*, 788 F.3d at 398–401.

[69] Further, this court has not decided whether *Duke* is retroactive.

[70] 18 U.S.C. § 3583(e)(2) (2006); FED. R. CRIM. P. 32.1(c); *see also United States v. Lyons*, 482 F. App'x 891, 893 n.3 (5th Cir. 2012) (per curiam) ("[D]efendants have prompt access to modification of supervised release[.]") (citation omitted).